EDWARD MARTIN, Appellant, *vs.* CHARLES BROWN, Impleaded with BEVERLY C. BONHAM, ET AL., Respondent.

APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

The weight which this Court will give to the decision of a Judge upon questions of fact, will depend upon the nature of the evidence given before him. If the evidence was written and documentary merely, the finding will be reviewed like any other question; but if the fact is founded on oral testimony, his decision will have equal weight with the verdict of a jury.

Where a person not in possession of real estate, quit-claims to a person in possession, there is no presumption that the grantee derives title merely through the quit-claim.

One Eben Swan conveyed lands to one Bonham, April, 7, 1857: On the same day, Bonham mortgaged the land to the Plaintiff, and after the mortgage was recorded, he (Bonham) conveyed the lands to one Baldwin Brown, who went into and held possession under this last deed, up to July 27, 1859, when he conveyed the lands by warranty deed to Charles Brown, his brother, who had been residing with him on the premises. At the time that Bonham conveyed to Baldwin Brown, he delivered to him the deed from Eben Swan to him, (Bonham) which deed had never been recorded. That *after being in possesion of the land some two years, under the deed from Bonham,* (which was recorded) Baldwin Brown obtained a quit-claim deed from Swan, (the original grantor) of all his interest in the premises, in consideration of an old account of $8. This deed was recorded February 25, 1859. In an action to foreclose the mortgage, the Defendant Charles Brown claims to be a *bona fide* purchaser for a valuable consideration, without notice of the unrecorded deed from Swan to Bonham, or of any title in Bonham, or of Plaintiffs mortgage. That in his purchase he had relied entirely upon the records in the Registers office, and had no notice of any title except as appears of record. Held—That admitting the deed from Baldwin Brown to Charles was for a valuable consideration, and that he purchased without notice of the unrecorded deed from Swan, yet the facts that he knew that his brother Baldwin was holding possession of the land for some two years before the date of the quit-claim deed, that this deed was for a nominal consideration only, and that he had examined the records, and knew therefrom that Baldwin Brown claimed title through Bonham at one time, were sufficient to have put him upon an enquiry which would have led to a knowledge of the outstanding unrecorded deed, and the Plaintiffs mortgage. And not having made that enquiry he cannot be deemed a *bona fide* purchaser without notice.

Points and authorities of Appellant:

*First.*—1. The Judge erred in his conclusion of law from the facts found by him, that the Plaintiff was not entitled to a decree of strict foreclosure against the Defendant Charles Brown, for the reasons stated by him in the *Second* of his conclusions of law, to wit:

"That the Defendant, Charles Brown, is a *bona fide* purchaser of said premises for a valuable consideration, and without notice of the existence of said unrecorded deed; and as such purchaser is entitled to hold and own said premises, discharged from Plaintiff's mortgage."

II.   The deed from Swan to Baldwin Brown was a nullity. The Judge has substantially so found.

1.   It was without a valuable consideration. The actual consideration being a pre-existing debt of Swan of $3, consisting of an old account of some two years standing. *Dickerson vs. Tillinghast,* 4 *Paige,* 215; *Stuart vs. Kissam,* 2 *Barb. S. C. R.* 493.

2.   There is no evidence that Baldwin Brown was the owner of said account, at the time he procured the quit-claim deed from Swan, February 24, 1859.

3.   The Judge has found as a fact, that "*Baldwin Brown took and held possession of said premises under the deed of Bonham to him,*" and that he acquired the title from the last mentioned deed, is evident from the testimony of *Swan, Bonham, and himself*.

4.   Swan, at the time he gave the quit-claim deed to Baldwin Brown, had no title nor interest in the premises, and had not had for two years previous.

5.   By a quit-claim deed, no title not in the grantor at the time, will pass. *Jackson vs. Matsdorf,* 11 *Johns. R.* 91; *Jackson vs. Winslow,* 9 *Cowen. R.* 13; *Sweet vs. Green,* 1 *Paige, R.* 473.

This deed from Swan to Baldwin Brown cannot therefore subserve either him or his grantee Charles Brown, as a source of title.   It is fraudulent and void.

III.   The Defendant, Charles Brown, in his answer relies upon this quit-claim deed from Swan to Baldwin Brown, as his source of title.   As the Judge in his decision has found that Swan in fact was the actual source of title to the premises,

and that he did actually convey them for a valuable consideration to Bonham, before Bonham executed the mortgage in question to the Plaintiff, April 7, 1857, and that Bonham subsequent to the mortgage executed a conveyance to Baldwin Brown, by which Baldwin acquired title to them, he should have ordered a decree of foreclosure against Charles Brown.

*Second.*—The evidence of Swan, Bonham and Baldwin Brown, proves that the title of the premises in question, came from Bonham and not from Swan to Baldwin Brown. The decision of the Judge, if any inference to the contrary can be drawn from it, is not only not supported by the evidence, but is against it.

It cannot be maintained that Charles Brown can claim Swan as the source of this title rather than Bonham.

*Third.*—This case does not come within the provisions of *Sec. p. R. S. of Minn.*, which protects a subsequent *bona fide* purchaser for a valuable consideration, who has his conveyance first recorded, against a prior unrecorded conveyance of the same premises.

This statute is the same as that of New York on the same subject, which has been held to apply only to *successive purchasers* of the same premises from the *same* grantor. *Jackson vs. Post*, 15 *Wendell, R.* 588, 594; *Dunham vs. Day*, 15 *Johns. R*, 555, 568; *Stugvesant vs. Hale*, 2 *Barbour's Ch. R.* 158; *Raynor vs. Wilson*, 6 *Hill, N. Y. R.* 469; *Schnitt vs. Large*, 6 *Barbour's S. C. R.* 373; *Wood vs. Chapin*, 3 *Kernan's R.* 52; *Opinion of Judge Comstock; See Sibley vs. Wolf*, 10 *Ohio R.* 80; *Harlan vs. Seaton*, 18 *Kentucky R.* 326; *Bates vs. Narcross*, 14 *Pick. R.*, as to the construction given to similar acts in other States.

Independent of express adjudication, this would seem to be the only reasonable construction of this and similar statutes.

*Fourth.*—But Charles Brown cannot be considered a *bona fide* purchaser of the premises.

I. He alleges in his answer that he relied upon the records of Hennepin county for the state of the title, which the judge sustained in his decision, both upon the question of fact and of law. And inasmuch as the deed from Swan to Bonham, which was the only foundation of Bonham's title, and hence of the

Plaintiff's mortgage, was not recorded, therefore the Judge concludes that the Defendant was protected from its effect.

II.   From the records the necessary inference would be that the title was still in the United States, and that Bonham had as good a title (if any) as Swan; and better too, if the priority of his conveyance to Baldwin Brown can avail any thing.   The records would also disclose the Plaintiff's mortgage as readily as Swan's pretended title if nothing more.

It would not be possible, therefore, upon this state of the case, for the Defendant not to have notice by the records of the Plaintiff's mortgage.

III.   If it be alleged that the Plaintiff's mortgage was not a subsisting incumbrance upon the title, by reason of the absence of the deed from Swan to Bonham, it may be replied that Charles Brown derives his title, not from what appears upon the record, but from *Swan's original pre-emption,* and thus from the actual state of the title, *irrespective of the record.*

But when he resorts to something *outside of the record,* it is proved that Swan conveyed to Bonham, at the same time Bonham gave the mortgage, and therefore he can take nothing from *Swan,* as his remote grantor, unless it be through Bonham, and then the Plaintiff's mortgage is an incumbrance on Defendant's title.

IV.   The Defendant had notice of the Plaintiff's mortgage.

(1.)   The recording of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same premises.   *Story's Equity Jurisprudence,* 1 *Vol. Sec.* 395, 403; *Parkhurst vs. Alexander,* 1 *Johns. Ch. R.* 394; 4 *Kent's Com.* 173 *and note.*

(2.)   It is notice to those who may thereafter claim under a different, as well as to those who may claim from the same source.   *Schutt vs. Large,* 6 *Barb. S. C. R.* 373.

V.   The Defendant had also such information from the record, and from the possession of his brother Baldwin, as would have led him, if prosecuted with reasonable diligence, to the discovery of the unrecorded deed from Swan to Bonham.

(1.)   The several deeds and mortgages from both Swan and Bonham, would have shown him that both had professed to exercise ownership over the premises, and would naturally have

led a purchaser of ordinary prudence to make inquiries as to their title—which would have shown the unrecorded deed in possession of Baldwin.

(2.) The *Bond* from Bonham and Cobb to Baldwin, of the same date with the deed from Bonham to Baldwin, which in terms provided for a conveyance from Bonham free from incumbrances, would have been sufficient to put him on inquiry as to the title.

VI. Anything which puts a party on inquiry as to the title, which, if prosecuted with reasonable diligence, would lead to a discovery of the unrecorded conveyance, amounts to constructive notice of the conveyance. *4 Kent's Com.* 175, 179; *Story's Eq. Jurisprudence,* 1 *Vol. Secs.* 399, 400; *Williamson vs. Brown,* 15 *N. Y. R.* 354; *Blaisdell vs. Stevens,* 16 *Vermont R.* 179 ; *Stafford vs. Ballour,* 17 *Ver. R.* 329 ; *Peters vs. Goodrich,* 3 *Conn.* 146 ; *Bolles vs. Chamsey,* 8 *Conn.* 390 ; *Booth vs. Barnum,* 9 *Conn.* 286 ; *Wilson vs. McCullough,* 23 *Penn.* 440 ; *Parker vs. Kane,* 4 *Wis. R.* 1.

VII. Delivery of possession of land to the vendee is sufficient to put all persons upon inquiry as to the title, and is even considered equivalent to recording a deed, so far as subsequent purchasers are concerned. *Morgan vs. Morgan,* 3 *Stewart, R* 383 ; *Walker vs. Gilbert,* 1 *Freeman's Ch.* 45 ; 1 *Smeade & Marshall, Ch. R.* 338 ; *Griswold vs. Smith,* 19 *Vermont R.* 452 ; *Rupert vs. Mark,* 15 *Illinois R.* 540.

Baldwin Brown for nearly two years prior to the execution of Swan's deed to him, had been in possession of these premises under his deed from Bonham, and even up to his conveyance to Charles Brown, who knew that he had been thus in possession claiming title under this deed. At all events this possession was sufficient notice to Charles of Baldwin's title, and of the source of it, and should have led him to inquire as to Bonham's title. Such inquiry, if honestly pursued, would have resulted in the discovery of the unrecorded deed from Swan to Bonham.

The circumstances attending the purchase by the Respondent from his brother, with an entire neglect to inquire into the title, notwithstanding, as he avers in his answer, he relied entirely upon the state of title appearing from the records,

together with the fact that the Appellant furnished the funds (constituting the consideration of his mortgage) which formed the purchase money of the premises in the deed from *Swan* to *Bonham*, show a strong equitable claim on the part of this Plaintiff, which entitle him to the consideration of the Court.

The finding of the Judge upon the facts as to the *bona fides* of the purchase by Charles Brown, is contrary to the evidence, and his conclusion of law as to the same point is also erroneous, and a new trial should be granted.

Points and authorities of Respondent:

*First.*—The finding or decision of the Court as to questions of fact is final and conclusive, and not subject to review. It is like the finding of a jury or referee. *Beaulieu vs. Parsons,* 2 *Minn. R. p.* 37, *and cases there cited.*

*Second.*—The finding of the Court below establishes these facts. That Respondent purchased the premises in question for a valuable consideration, and in good faith, from Baldwin Brown. That he had no knowledge of the unrecorded deed from Swan the original grantor to Bonham, nor any knowledge as to the state of the title except what the records disclosed. The records disclosed a regular chain of title from Swan to Baldwin Brown by deed of *bargain and sale.*

The deed from Swan to Bonham under which the Appellant claims, not being recorded, is void as to the Respondent, he having no knowledge or notice of its existence at the time of his purchase. *Sec.* 24, *Chap.* 35, *Comp. Stat. Minn. p.* 400.

(A.) By the term " subsequent purchaser," is meant a person who *derives* title *from* the same or common grantor however remote. It applies alike to the first, the most remote, or any intermediate grantee, and is not confined as the counsel for Appellant claims, to the *first* grantor or grantees of the *same* grantor.

2 *Hilliard, p.* 454, *Sec.* 43. The authorities also hold to this rule that the registry acts do not apply to subsequent purchasers claiming under an independent title, or title from a stranger, but they do apply to those claiming under or *from* a common grantor.

2 *Hilliard, p.* 473, *Sec.* 141 ; the only case which seems to

hold the doctrine claimed by the Appellant in his third point, to wit: that the section in question applies only to successive purchasers of the same grantor, is that of *Raynor v. Wilson*, 6 *Hill N. Y. R.* 469. The Court will see by reference to this case that this point was not involved, and the only support which this rule can derive from that case is the dictum of Justice Beardsley. In referring to this case and the rule as laid down by Beardsley, J. the Court by Welles, J. in the case of *Schutt vs. Layr*, 6 *Barb. S. C. R.; p.* 369–70, say: "In the case referred to (*Raynor vs. Wilson*) *it was not necessary to maintain the doctrine which it is supposed to assert in order to produce the same result or decision.* If this construction is to prevail, much less security than has generally been supposed is given to purchasers by examination of titles in the offices of County Clerks."

Furthermore it may be remarked that the principal reason assigned by Justice Beardsley, for giving this limited construction to the phrase "subsequent purchaser," is because of a subsequent provision of the New York statute, which is not contained in our statute, which in his opinion seems so to qualify the meaning of the section in question. *See his opinion in the case of Raynor vs. Wilson.*

(B.) The case of *Mallory vs. Stodder*, 6 *Ala.* 801, *cited in United States Dig. Supp. Vol.* 4, *p.* 534, *Sec.* 360, seems to be exactly in point and analogous to the case at bar. The syllabus of the case is as follows:

"A purchaser without notice from a subsequent purchaser, *with notice* of the prior unrecorded deed, is not affected by it, and will take a title cured of the fraud."

*Third.*—The rule referred to by Appellants' counsel, that "no title not in the grantor at the time will pass by a quit-claim deed," has no reference to this class of cases. It merely means that a quit-claim deed will not operate to convey a subsequently acquired title.

E. A. RAYMOND, Counsel for Appellant.

F. R. E. CORNELL, Counsel for Respondent.

Martin *v*. Brown et al.

*By the Court.*—EMMETT, C. J.   The defence assumed in the argument of this case, that the Judge below found as a matter of *fact* that Charles Brown was a *bona fide* purchaser, for a valuable consideration, of the lands in question; and hence it is insisted that we should not disturb that finding, unless it is grossly against the weight of evidence; that where the facts of a case are submitted to the Court, the decision of the Judge thereon is entitled to the same consideration as the verdict of a jury.

One great reason why Courts are loth to disturb the verdict of a jury upon a question of fact, is because the jury, having the advantage of witnessing the appearance and conduct of the witnesses on the stand, are better able to judge of the weight to be given to their testimony; and being equally competent to determine matters of fact with the Court, an appeal from their decision is equivalent to appealing from the judgment of twelve competent men, to the judgment of a less number, who are no better qualified to decide such questions, and have not the advantage of seeing the conduct of the witnesses while testifying.   The same reasons operate in favor of the decision of a single judge upon a question of fact, from oral testimony taken before him.   But where the fact depends wholly upon written or documentary evidence, there is no reason for the application of the rule, besides, as our Courts are constituted, such an appeal would be from the judgment of but one man to the judgment of three, upon the same evidence.   Hence, in all chancery suits under the old system, where witnesses were not examined in open Court, the decision of the Vice-Chancellor upon a question of fact submitted to him was reviewed upon appeal, with no more hesitation than his decisions upon questions of law.   The weight, therefore, which we would feel disposed to give to the decision of a single Judge upon questions of fact, would depend upon the nature of the evidence—whether it was written and documentary merely, or oral.   If the evidence was of the former character only, the finding of the Judge may be reviewed as any other question; if his decision is dependent upon the latter, it is of equal weight with the verdict of a jury.

In the present case much of the evidence was given by wit-

nesses in open Court, and so far as the Judge found upon such testimony, his decision should not be disturbed, for it may have greatly depended upon the demeanor of the witnesses while on the stand. It will be observed, however, that the Judge did not find as a matter of *fact* that Charles Brown was a *bona fide* purchaser. He seems purposely to have avoided such a conclusion. He simply finds certain facts, from which he concludes as matter of law, " that Charles Brown is a *bona fide* purchaser for a valuable consideration and without notice of the existence of said unrecorded deed, and as such purchaser is entitled to hold and own said premises discharged from Plaintiff's mortgage."

We do not think this conclusion of law follows the facts found.

It appears that Eben Swan, the common source of title to the parties, had conveyed the premises in question to Bonham, April 7, 1857. That afterwards, on the same day, Bonham mortgaged to the Plaintiff, and after the mortgage was duly recorded, conveyed to Baldwin Brown on the 9th of April, 1857, who immediately entered into and held possession of the premises under this deed, up to July 27th, 1859, when he conveyed the same by deed of general warranty to his brother Charles Brown, who was then, and had been for several years residing in his family. That at the time Bonham conveyed to Baldwin Brown, he delivered to him the deed from Swan, which, however, has never been recorded, and said Baldwin still retains or has destroyed it. That after remaining in possession nearly two years, under the deed from Bonham, which was on record, said Baldwin, on the 24th day of February, 1859, obtained a quit-claim deed from Swan of all his interest in the premises, for the consideration of one dollar as expressed in the deed, but for an actual consideration of an old account of about three dollars. This deed was recorded February 25th, 1859.

Charles Brown claims to be a *bona fide* purchaser for a valuable consideration, without notice of the unrecorded deed from Swan to Bonham, or of any title in Bonham, or of the Plaintiff's mortgage, and he avers in his answer " that no such mortgage was on record, and that in his purchase he had relied

entirely upon the record in the register's office in relation to the title thereof, and had no notice or knowledge of any title except as the same appears of record in said register's office."

The Judge found in substance the foregoing facts, and as to the conveyance to Charles Brown, "that the nominal consideration mentioned in said deed is one thousand dollars, the actual consideration *as sworn on the trial* was two hundred dollars in cash, and the cancellation of notes against said Baldwin Brown to the amount of two hundred dollars. That there is no evidence that the Defendant Charles Brown had knowledge of the existence of the unrecorded deed from said Swan to the Defendant Bonham at the time he purchased the land in question. Nor that he had any knowlege of the state of the title thereof, except the records in the office of the Register of Deeds of the county." From the language here used by the learned Judge, we are of opinion that he did not intend to find affirmatively that this deed was upon a valuable consideration, or that Charles Brown was in fact ignorant of the existence of the unrecorded deed, or the state of the title. He merely states what was *sworn* to be the consideration, and finds that there is no evidence of a want of consideration, and that Charles Brown is not shown in fact to have had knowledge of the unrecorded deed and state of the title, except as shown by the records. Indeed we do not think the proof would justify him in going farther.

But, although the deed may have been given for a valuable consideration, and the purchaser may not in fact have known of the unrecorded deed, yet if he had notice of any facts which should have put him upon an inquiry, that upon investigation would have led to a knowledge of the outstanding title, he cannot be deemed a *bona fide* purchaser.

What are the facts which came to the purchaser's knowledge in this case? He was a brother of his grantor, and an inmate of his family during the time he was in possession of the premises. He must have known that his brother was not holding under the quit-claim deed from Swan to him, for that was not made until February 24, 1859, and he had already been in possession since April, 1857. In addition, this deed did not purport to do more than quit-claim to the person in possession

the interest which Swan had in the premises, for the nominal consideration of one dollar only. We can hardly suppose that Charles Brown in fact believed that his brother derived title solely through this deed, or that Swan would convey an interest of any value for any such consideration. Swan does not pretend by this deed to convey the land itself, but only such interest as he may have therein, and having previously conveyed all his interest, had in reality nothing to convey.

But it is claimed that under our statute such a deed operates as a conveyance to pass the estate, whether the releasee has a right therein or not, and that it must have the same effect as a deed of bargain and sale. The language of the statute is a little peculiar—it is as follows:

"A deed of quit-claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could *lawfully* convey by deed of bargain and sale."

If the Legislature intended by the use of the term "lawfully convey," to limit the estate conveyed, to such as the grantor has a legal right to convey, then, as he may not lawfully convey land which he has already conveyed to another, but may release any real or fancied interest remaining in him, nothing passes beyond his actual interest at the time of the conveyance, whatever that may be. When, therefore, a person relies on a mere quit-claim of the interest which a party may have in property, he does so at his peril, and must see to it, that there is an interest to convey. He is presumed to know what he is purchasing, and takes his own risk. Ordinarily a deed of quit-claim and release, presupposes in the releasee an interest distinct from that released. There is no presumption therefore that the title is derived solely from such a deed—certainly none, where, in a case like the present, a person not in possession or claiming title, quit claims to one in possession.

Again, the Defendant avers in his answer, that he was guided by the records in the Register's office, and that the Plaintiff's mortgage was not on record, thereby admitting that he had examined the records. Had that examination been as thorough as it should have been, he would have found the record of the mortgage to the Plaintiff, and of the deed from Bonham to Baldwin Brown, together with a bond for a deed

executed by Bonham and Cobb, all showing that Baldwin in fact claimed title through Bonham. Whether he had actual knowledge of Bonham's deed and bond, does not appear, but having searched the records, he was bound to know all that could be learned from them, even if the recording of these instruments was not of itself notice to all the world of their contents, and that Bonham claimed title to the land at the time of their execution. If he had actual notice of Bonham's title, and that Baldwin claimed through him, he could not be called an innocent purchaser, and if the recording of these instruments is constructive notice only, the effect is the same. We think, however, that having examined the records, he is chargeable with actual notice of all they contain. They show that Bonham at one time claimed to own the land, and that Baldwin Brown claimed title through him. A knowledge of these facts would necessarily lead to an inquiry into Bonham's source of title, and that inquiry pursued with ordinary diligence and prudence, would have led to the knowledge of the unrecorded deed from Swan to Bonham.

We are, therefore, of opinion that although Charles Brown may have, in fact, been ignorant of Bonham's title, and the Plaintiff's mortgage, which, however, we seriously doubt, yet the fact that his grantor was known by him to be in possession and claiming title for nearly two years prior to the date of the first quit claim deed from Swan to him—that this deed did not purport to convey the premises, but only Swan's interest therein, and that, too, for the insignificant sum of one dollar— and that the records in the Register's office showing that Bonham had claimed title to the land, and had conveyed it to Baldwin, and which Charles admits he had in fact examined, and been guided by, were sufficient to have put him upon an inquiry, which, if pursued with reasonable diligence, would have led to the knowledge of the unrecorded deed from Swan to Bonham.

The facts found by the Judge, and admitted by the pleadings, do not, as we think, warrant the conclusion of law "that Charles Brown is a *bona fide* purchaser for a valuable consideration, without notice of the unrecorded deed, and as such purchaser entitled to hold and own said premises, discharged

of the Plaintiff's mortgage, and that the Plaintiff is not entitled to a judgment of foreclosure, as against the Defendant, Charles Brown."

The order denying a new trial is reversed, and a new trial awarded.