## GRESS v. EVANS, ET AL.

*1. PROCEEDINGS:* LAW AND EQUITY: DISTINCTIONS ABOLISHED. Under the provisions of the Code of Civil Procedure, all distinction between actions at law and suits in equity, and the forms of all such actions and suits have been abolished, and a uniform course of proceeding established.

*2. APPELLATE COURT:* JURISDICTION: EFFECT OF CONSENT. The mere consent of parties cannot confer jurisdiction, unless in a very few special instances. The appellate powers of the Supreme Court are fixed by law, and can be exercised only in the modes and channels prescribed by the Codes.

*3. ——:* EFFECT OF STIPULATION: UNCERTIFIED EVIDENCE. A stipulation of parties as to testimony adduced on the trial below, in the absence of a case made or exceptions settled, will not authorize the appellate court to receive and review *de novo* such uncertified evidence.

*4. APPEAL:* TRIAL TO THE COURT: CASE AND EXCEPTIONS. Upon the trial of a cause to the Court, without the interposition of a jury, either party desiring to review upon the evidence appearing upon the trial, a question of fact or of law, must make a case or exceptions, in like manner as upon a trial by a jury, except that the Judge in settling the case is required to briefly specify the facts found by him and his conclusions of law.

*5. ——: ——: ——.* Cause tried to the Court, and the following general exceptions appended to the decision: "To which finding of facts, conclusions of law and the order of the Court, the defendants except." *Held:*—That on appeal from the judgment, with no case made or exceptions settled, there was nothing before the appellate court, except such papers as the clerk was au-

Gress vs. Evans, et al.

thorized to attach and file as a judgment roll, to-wit: the summons, pleadings, or copies thereof and a copy of the judgment, with the findings on the facts and conclusions of law, of the Judge who determined the cause.

6. ――――: INADVERTENCE OR NEGLECT. Inadvertence or neglect of parties or counsel to properly prepare a case for review, is not a matter for which the appellate court has authority to provide a remedy.

7. ――――: PREPARATION OF: CONCURRENCE OF JUDGE. The presiding Judge, before whom a cause is tried is a recognized entity in making a case or in settling exceptions, and his concurrence or approbation, as a general proposition, is necessary in the formulation of either the one or the other.

8. CONVEYANCE: UNRECORDED: NOTICE. Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser.

9. ――――: ――――: ――――. There should be proof of actual notice of prior title, or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent purchaser.

10. ――――: ――――: ――――. Actual notice, of itself, impeaches the subsequent conveyance. Proof of circumstances, short of actual notice, which should put a prudent man upon inquiry, authorizes the Court, or jury, to infer and find actual notice.

11. ――――: ――――: ――――. Notice is either actual or constructive. Actual notice consists in express information of a fact. Constructive notice is notice imputed by the law to a person not having actual notice; and every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

12. ――――: PURCHASER: GOOD FAITH. Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of the law, together with an observance of all information or belief of facts which would render the transaction unconscientious.

*Appeal from Minnehaha County District Court.*

THE facts are stated in the opinion.

*E. G. Wheeler,* for appellant.

The deed of Jane L. and Moses S. Titus to Byron M. Smith was not recorded and was not entitled to record for want of a certificate of the official character of the officer who took the acknowledgement at the time the defendants' deed was re-

corded, and was not notice to the defendants. (Civil Code, 1865-6, sec. 528; 20 Wis. 523, and authorities cited : 4 Kent's Com. 174; 2 Story's Equity jur. 276; 43 Cal. 467.)

The deed of Byron M. Smith to plaintiff, R. B. Gress, though prior in date to the deed of the Titus' to the defendant Evans, is not notice to Evans or his grantees, it not being recorded until long after the deed of the Titus' to Evans.

If the defendant Evans purchased the land of Jane L. Titus and her husband in good faith for a valuable consideration without notice of the prior deed, then the deed of Titus and husband to Smith and the deed of Smith to the plaintiff Gress, are both void as to Evans and his grantees, Evans' deeds having priority of record. (Civil Code, 1865-6, page 97, §§ 530 and 531.) This is not only settled by statutes, but is the doctrine of the common law. (4 Kent's com. 173-4; 20 Wis., 523; 1 John. Ch. Rep. 300; 3 Cranch 140; 2 Cowen, 246; 2 Walter Penn. rep. 75.) As to the allegations of actual notice, the burden of proof is on the plaintiff. It devolves on the plaintiff to show that the defendants bought with actual notice of his ( the plaintiff's ) rights. *Scales v. Wiley*, 11 Iowa, 264.

The evidence should be clear and undoubted to charge a purchaser with notice of title in a third person. Suspicion of title is not enough. (8 John. 137-140; 14 Ill. 66.)

There is no evidence of actual notice. No evidence that either Evans or Burbank had any knowledge of the existence of the deed from Titus to Smith or from Smith to Gress. The doctrine of constructive notice does not apply, because the defendant Evans did make diligent enquiry of Smith, the proper person, but failed to obtain any answer whatever. (Civil Code, §§ 2009–10–11; Cal. Civil Code, 12 and note; 3 Cal. 179; 15 N. Y., 354; 4 Kent's com. 179; 19 Wend., 574; 4 Kent's com. 465.)

That the defendants bought the land in good faith for a valuable consideration. (Civil Code, sec. 2007; 4 Kent's com. 465.)

The relinquishment by Evans of his right by occupancy or (squatter's right) to this same land to the Titus' as shown by

the deed of Titus and wife to Evans, by their attorney, Smith, is a valuable consideration for that deed, which deed establishes in Evans an equitable estate or interest in the land. The payment of the money to Mrs. Titus, though small in amount, is also a valuable consideration. (Hilliard on R. E. 276-7: 4 Kent's com. 462-3-5; 3 Wash. on R. P.)

The registry of a deed is of no validity if such deed is defective through the want of some statutory requisite. (2 Hilliard 437, sec. 83.)

The Legislature has authority to confirm deeds defectively executed, but cannot affect vested rights. (2 Hilliard, 405.)

A deed of all the grantors' right and title to land, conveys the land itself, and this is the proper form of quit-claims of an estate in lands. (3 Wash. on R. P., 314 and 417; 33 N. H. 22; 34 Miss., 18; 22 Vermont, 104; 5 Iowa, 66; 11 N. H., 74; 23 Texas, 614; *Graf, et al, v. Middleton*, 43 Cal., 341; *Jackson v. Fish*, 10 Johnson, 456.)

The words " grant, bargain and sell " in a deed, amount to a covenant that the grantor has done no act, nor created any incumbrances whereby the estate granted by him might be defective. That the estate was indefeasible, as to any act of the grantor. (3 Wash. R. P. 417.) This construction is approved by Chancelor Kent, ibid; 32 Ill., 348; 5 Iowa, 62.

No presumption of notice can arise from the absence or presence of covenants in a deed. (Rawle on covenants for Title.)

An after acquired title enures to a grantee under a quit-claim deed where the granting words are " grant, bargain, and sell." Statute 1862, page 67, sec. 3; 32 Ill., 348.)

*Edward H. Brackett*, for same.

This is purely a case in chancery, as at common law, governed by the Organic act, and as such, no bill of exceptions is required, or assignment of error, either the one or the other, as by stipulation *all* of the evidence appears in the record of the cause. The Act of Congress of 1874, allowing or permitting a Code practice is merely permissive or curative;

hence at common law a bill of exceptions in a *chancery* cause is unheard of and unknown. The case being not a jury case is determined in the appellate court solely on the body of the record. The case is, therefore, legitimately now before the court for its final adjudication and determination. And the points now made on argument are:—

That the deed of August 11th, 1860, of Byron M. Smith, as attorney in fact of Jane L. Titus and Moses S. Titus, whether a quit claim or not operated as an equitable adjustment of the scrip, and renders the title or claimed title of Smith or his grantee, the plaintiff, the mere trustees of Evans.

That the deed of 11th of August, 1860, having been executed by Byron M. Smith, as the assumed attorney in fact of Jane L. Titus, the scripee; and the said Smith being the grantor of the plaintiff Gress, both Smith and the plaintiff are effectively and forever estopped from asserting or claiming title to the land in contest. (*Lee v. Griffith*, 26 Ills., 76.) The deeds, each and all are deeds of bargain and sale, and not of mere release, and they are all therefore statutory deeds, as effectual as those of livery of seizin at common law; and hence that any and *all subsequently* acquired title *enured* to their support. (*King v. Gilson*, 32 Ills., 348; *Brown v. McCormic*, 6 Watts, 60; *Shaw v. Gilbert*, 7 Bass, 111; *Root v. Cook*, 7 Penn. St., 380; *Cotton v. Ward*, 3 Mo., 304; *Reese v. Smith*, 12 Mo., 344; 4 Gibon, 350; 4 Scan., 65.) In conclusion of the opinion in 4 Gibon, 353, the Court say: "Upon a careful view of all the authorities we are clearly of the opinion that the title subsequently acquired did enure to Hillman," *i. e.*, in virtue of a statutory deed of bargain and sale, *i. e.*, quit claim. See, also, Washburn on Real Property, pages 473 and 417, and notes 1, 3, 5, 6, and the various authorities there cited.

We claim that the cases of *Oliver v. Piatt, Jackson v. Brown*, and *May v. LeClair*, decided by the U. S. Supreme Court and referred to in the learned opinion of his honor the Judge of the district, are each and all of them causes arising merely from past relations, and have no applicability to the case at bar.

That the Minnesota decisions referred to are not *good law*, but bad law—entirely destructive to land titles, and not to be followed by this supreme appellate tribunal in determining Dakota land titles.

*C. J. B. Harris*, for appellee.

Nothing passed to Evans by the quit claim deed executed in 1860, as no title was obtained to the land until December, 1863. (*White v. Brown*, 14 Ohio St., 343, and authorities under 4 Point.) The offer of Smith when he located the scrip in December, 1863, to give Evans 40 acres, cannot be enforced, because not in writing, and is merely the offer of a gift. E. had no interest in the land; his improvements had been burned and he had removed to Yankton; abandoned the land and told Smith he might scrip it, before S. offered him the 40 acres. At most, it only created a moral obligation from which S. was excused when E. refused to make good his legal obligations to S., amounting to about $300.

Plaintiff obtains title from Smith, and Smith from the patentee by deed dated March 31, 1869. This being the first deed executed by the patentee, it must prevail over any subsequent deed executed by her, except to a purchaser of the *same* property in *good faith* and for a *valuable consideration*, whose deed is first duly recorded. (Civil Code, § 530.) Evans claims title by quit claim deeds; hence he cannot be regarded as a purchaser in *good faith* of the *same* property, although his deeds have been first recorded. (*Brown v. Jackson*, 3 Wheat., 449; *Martin v. Brown*, 4 Minn., 283, 292; *Hope v. Stone*, 10 Minn., 141; *Everest v. Ferris*, 16 Minn., 26, 27, 28, 32; *Marshall v. Roberts*, 18 Minn., 405; *Johnson v. Robinson*, 20 Minn., 189; *Oliver v. Piatt*, 3 How., 410; *May v. LeClair*, 11 Wall., 232, 217, 220–1; *Vattier v. Hinde*, 7 Pet., 252; *Boon v. Chiles*, 10 Pet., 177; *Rogers v. Burchard*, 7 American R., 283; *Way v. Lyon*, 3 Blackf., 76; *Coe v. Persons Unknown*, 43 Me., 432; *Walker v. Lincoln*, 45 Me., 67; *Doe v. Reed*, 5 Ills., 117; *Smith v. Bank of Mobile*, 21 Ala., 125; *Sherwood v. Barlow*, 19 Conn., 471; *Stoffel v. Schroder*, 62 Mo., 147; *Mann v. Best*, 62 Mo., 491; *Young v. Clippinger*, 14 Kans., 148; *Watson v. Phelps*,

40 Iowa, 482; *Maunaring v. Terry*, 39 Texas, 67; *Carter v. Wise*, 39 Texas, 273.) The statutes referred to in the foregoing decisions are mostly identical with ours, especially in Minnesota.

Evans could convey no title to Burbank, as his deeds upon their face are sufficient notice to B. of the infirmity of his title. See authorities cited under last head, especially *Marshall v. Roberts*, and *Carter v. Wise*.

The evidence shows conclusively that Evans took his deeds with notice, and not for a valuable consideration.

Burbank admits in his deposition that he had actual notice of facts sufficient to put him upon inquiry, and that he did nothing except to examine the records. (*Sigourney v. Munn*, 7 Conn., 324; *Hawkinson v. Barber*, 29 Ills., 80; *Dickinson v. Breeden*, 30 Ills., 279; *Rupert v. Mark*, 15 Ills., 540; *Harper v. Reno*, 1 Freem., (Miss.) Ch. 323; *Warren v. Swett*, 31 N. H., 332; *Hart v. Bank*, 33 Vt., 252; *Wilson v. Hunter*, 30 Ind., 466; *Williamson v. Brown*, 15 N. Y., 354; *Fassett v. Smith*, 23 N. Y., 252; 24 Ind., 429; 8 Conn., 389; 3 N. J. Eq., 36; 4 Blackf., 383; *Eck v. Hatcher*, 58 Mo., 235; *Shortwell v. Harrison* 30 Mich., 179; *Monroe v. Eastman*, 31 Mich., 283.) There were no implied covenants when Evans took his deeds. (Sec. 489, Civil Code.)

SHANNON, C. J.—The proceedings in this action, until the appeal, were under the Code of Civil Procedure of January 10th, 1868, by which the distinction between actions at law and suits in equity, and the forms of all such actions and suits were abolished, and but one form of civil action was established. The preamble to that Code asserts that the distinction between legal and equitable *remedies* should no longer continue, and that a uniform course of proceeding, in all cases, should prevail. Doubts having been entertained whether, under the Organic acts creating this and other Territories, the Codes adopted therein which authorized a mingling of common law and chancery jurisdiction in the same proceeding, or a uniform course of proceeding in all cases legal and equitable, were repugnant to the Organic acts, Congress, by an

act approved April 7, 1874, removed all such doubts by confirming such Codes, and by authorizing *such uniform course of proceeding.*

The trial in this action was by the Court at May term, 1875, and its decision, in writing, was given June 20th, 1875. To the decision is appended the following general exception, to-wit: " to which finding of facts, conclusions of law, and order of the Court, the defendants except." Judgment upon the decision was sometime afterward duly entered.

It is to be observed that no further proceedings were had until the notice of appeal was served and filed on 24th of April, 1877, nearly two years after the judgment. The appeal is from the whole of the judgment, and brings up the judgment roll proper. And here the first question arises.

Counsel for appellants contend that, under the general exception (noted above) to the decision of the court below, and in the absence of a case made or exceptions settled, or any attempt, in the District Court, to re-examine the facts found, this appellate court is bound to receive, and to review, *de novo*, the mass of uncertified evidence which has been laid before us; and moreover that a certain stipulation bearing date the 21st of May, 1877, gives this court jurisdiction so to do.

The answer to this is, that the mere consent of parties cannot confer jurisdiction, unless in a very few special instances. The appellate powers of this tribunal are fixed by law, and can be exercised only in the modes and channels prescribed by the Codes. No matter what may have been the past practice, here or elsewhere, now a uniform course of procedure to secure a review on appeal, is plainly marked out, and must be pursued. This means that the same steps requisite to obtain a review in an action purely legal, must likewise be taken in a case purely equitable. If the counsel who tried the cause believed the findings were incorrect, or that the evidence was insufficient to justify the decision, the remedy under the Code then existing was simple and obvious. Under it, when the trial was by the Court, either party desiring to review, *upon the evidence appearing upon the trial*, a question of fact or of law, could make a case, or exceptions, in like

manner as upon a trial by a jury, except that the Judge, *in settling the case*, was required briefly to specify the facts found by him, and his conclusions of law. Nothing like this was done, or was even attempted to be done. No effort of any description was made to introduce the evidence, or any part thereof, within the judgment roll. Consequently, such essentials being wanting, there is nothing before us, on this appeal, except such papers as the clerk was authorized to attach and file as a judgment roll, to-wit: the summons, pleadings, or copies thereof, and a copy of the judgment, with the findings on the facts and conclusions of law of the Judge who determined the cause. And this is so whether under the old or new Code of Procedure; for in both, the constituents of a judgment roll are identical, and the latter also provides for a case or exceptions. But if, after such lapse of time, anything further to remedy omissions was permissible under the present Code, it is sufficient to state that no such step has been taken. Inadvertence or neglect of parties or counsel to properly prepare a case for review, is not a matter for which this court has authority to provide a remedy. The law helps the vigilant, before those who sleep on their rights.

It should furthermore be borne in mind that under both Codes the Judge is a recognized entity in making a case, or in settling exceptions. His concurrence or approbation, as a general proposition, is necessary in the formulating of either the one or the other. In his absence, and without his knowledge or consent, attorneys cannot do this for him, especially when nearly two years have run from the termination of a trial. These remarks are naturally suggested by the anomalous proceedings before us; for among the batch of so-called uncertified evidence thrust upon our attention, there is a certain portion which, most manifestly, was never offered in the trial court. Altogether, the case as thus attempted to be made up very much resembles an agreement to submit facts in controversy to this court in the first instance, which were not heard or determined in the District Court. We must therefore take the record as it legally comes before us, and ascertain what, if any, errors are in it. The case as thus pre-

sented is upon the original report of the Judge, and we are to assume the same facts as found by him. The general rule is, that every presumption is to be indulged in favor of a judgment; and this court will not look into evidence which is not authenticated, to find a fact for the purpose of reversing a judgment.

The action was brought to quiet plaintiff's title to the S. E. quarter of section nine, in township one hundred and one, of range forty-nine, and to remove a cloud from his title caused by certain deeds executed and delivered to defendants for said land, and which were by them placed on record before the plaintiff's deeds were recorded. The findings of the Judge are, that "the land in controversy was entered by what is known as Indian half-breed scrip, in the name of Jane Titus, at the Vermillion land office, in December, 1863, and a patent issued therefor by the United States government, bearing date February 1st, 1868, which was filed for record in the office of the register of deeds of Minnehaha county, D. T., May 14th, 1872. Plaintiff claims title under deed, quit claim in form, executed by Moses S. Titus and Jane L. Titus, his wife, to Byron M. Smith, dated March 21st, 1869, filed for record in Minnehaha county, May 14th, 1872; and deed from Byron M. Smith and wife to plaintiff, dated April 7th, 1870, and filed for record in Minnehaha county, May, 1875. Defendants claim title under two certain deeds, executed by Jane L. Titus and Moses S. Titus, her husband, in form quit claim, with special covenants, one dated May 17th, 1871, and filed for record May 23d, 1871, and the other bearing date August 11th, 1871, and filed for record September 18th, 1871; and deed from defendant Evans to defendant Burbank, warranty, for the north half of said tract, executed September 2d, 1871, and filed for record in Minnehaha county, October 4th, 1871."

As to the title of the plaintiff, Gress, the Judge found "that the chain of title from the general government to plaintiff is complete, and the deed from Byron M. Smith to plaintiff vested in him absolutely the fee-simple title, where it still remains unless it has been divested by the subsequent conveyances to defendants." And as to these, it is further found

.that " the deeds from Jane L. Titus and Moses S. Titus to Evans, and from Evans to Burbank, were executed and delivered subsequent to, but recorded before the deeds to Smith and from Smith to plaintiff."

And this, from the pleadings themselves, is the substantial paramount point in the whole controversy. The complaint substantially alleges fraudulent designs and intentions on the part of the defendants in procuring and recording their deeds, and charges that before the dates of their deeds they had full, complete, and actual notice of the prior unrecorded deed from the Tituses to Smith. The defendants, in their answers, deny all fraudulent purposes, and assert that they were purchasers in good faith and for a valuable consideration, and had no notice, either actual or constructive, and claim that they should be protected. The defendants having, admittedly, their deeds first duly recorded, the direct and vital issue before the trial court was:—were the defendants purchasers in good faith and for a valuable consideration? Had they notice either actual or constructive?

Upon this issue the findings are, that " the deed from Jane L. and M. S. Titus to Evans, dated May 17th, 1871, as before stated, is in form a quit claim—'by these presents grant, bargain, sell, release, and quit claim    *    *    *    all their right, title, interest, claim, or demand.    *    *    *    To have and to hold the above quit claimed premises    *    *    *    so that neither the said party of the first part, their heirs or assigns, shall have any right, title, or interest in and to the aforesaid premises.'" "The second deed to Evans, dated August 11th, 1871, is the same in form, with the exception of the covenants which are as follows: 'and the said party of the first part    *    *    doth covenant with the said party of the second part    *    *    *    that they have not made, done, or executed, or suffered any act or thing whatsoever whereby the above premises, or any part thereof, now are, or at any time hereafter shall or may be imperilled, charged, or incumbered in any manner whatsoever.'"

The next important finding is:—" that Evans was not a purchaser in good faith, but that he obtained his deed by

fraud and misrepresentation." And again that "it is dis-
closed by the evidence that Mr. and Mrs. Titus were induced
to make this deed by the representations of Evans that he
was the person entitled to it; that he was the owner of the
land, but that there was some defect in his title which he
wished remedied," etc. And furthermore it is found, that
"when he" (Evans) "applied to Mr. Titus for a deed he was
told by Titus that *they had sold the scrip, and that they did not
claim any right in the land, that they considered the land sold so far
as they were concerned.*" To this the Judge immediately adds
as follows: " Evans knew he was not the purchaser of the
scrip, or his assignee, and he made no inquiry as to who had
purchased the scrip, or whether they had previously executed
a deed.

There is another finding relative to non-inquiry from Smith,
which concludes by stating that Evans "at no time asked
him" (Smith) "if he had received a deed, although from pre-
vious conversations he must have known that Smith had, or
claimed to have, some interest in the land."

But as to the defendant, Evans, there is yet another signifi-
cant finding, which is as follows: "The evidence clearly
establishes the fact that he" (Evans) "paid no consideration
whatever. No consideration was mentioned or alluded to.
After the deed was executed and delivered, Evans made a
present to Mrs. Titus of ten dollars, as he then stated, to com-
pensate them for their trouble. It was neither given nor
received as a consideration for the deed. The grantors neither
asked nor expected anything, but made the deed to Evans
because they supposed him to be the party entitled to it, and
for the purpose of curing some defect in his title."

Such are the prominent findings of fact in relation to the
defendant, Evans, on the issue of his being a purchaser in
good faith and for a valuable consideration. And we must
next turn attention to the findings regarding the other defend-
ant, Burbank. As to him, the Judge has found as follows,
to-wit: "He" (Burbank) "admits that he was told that
Smith had a power of attorney from Titus and husband to
locate certain scrip upon the land in controversy, *and might*

*hold a power of attorney to convey said land, or a deed to the same.*
It does not appear that he made any effort to find out anything further in relation to the matter, except to examine the records. He did not inquire of Smith, or attempt to ascertain his address or anything of the kind. It does not even appear that he was ignorant of Smith's whereabouts, or that he might not have readily applied to him for information. He claims to have inquired of others, but their names he does not disclose.

From these findings, the trial court deduced the conclusions that " Burbank cannot stand as a *bona fide* purchaser without notice," and that Evans was in the same position; and that " the equities of this cause are with the plaintiff, and that the deeds to defendants are fraudulent and void as against him " Is there any error in this?

Our Civil Code makes void a conveyance not recorded, only as against a subsequent purchaser of the same property, or any part thereof in good faith and for a valuable consideration. (See Civil Code of 1866, § 530; Revised Codes, page 341, § 671.) Actual notice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which should put a prudent man upon inquiry, impeaches the good faith of the subsequent purchaser. There should be proof of actual notice of prior title, or prior equities, or circumstances tending to prove such prior rights, which affect the conscience of the subsequent purchaser. Actual notice, of itself, impeaches the subsequent conveyance. Proof of circumstances, short of actual notice, which should put a prudent man upon inquiry, authorizes the Court, or jury, to infer and find actual notice.

Or to express it exactly, good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious. And notice is either actual or constructive. Actual notice consists in express information of a fact. Constructive notice is notice imputed by the law to a person not having actual notice;

and every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself. (Civil Code of 1866, §§ 2007–8–9–10–11; Revised Codes, pages 504–5, §§ 2105–6–7–8–9.)

Viewed in the light of this law on the subject, from the findings, clearly the plaintiff's unrecorded conveyances were not void as against Evans; and as the admissions of Burbank are to be taken most strongly against himself, he must be considered as having had notice of circumstances sufficient to put a prudent man upon inquiry, and having omitted to make such inquiry with reasonable diligence, he must be deemed to have had constructive notice of the fact itself.

The learned Judge who tried the issues, arrived at a conclusion of law which in a case like the present, so pregnant with other overshadowing circumstances, it is unnecessary now to examine or determine. He was of opinion that by a deed which (like those to Evans) simply purports to pass "the right, title, interest, claim, or demand" of the grantor, the grantee does not obtain anything which the grantor had previously parted with, although the subsequent deed was first recorded; that such grantee cannot be regarded as a *bona fide* purchaser without notice; that, therefore, Burbank took nothing under his deed from Evans, as Evans had nothing to convey, and that the terms of the quit claim conveyances to Evans were, of themselves, notice to both Evans and Burbank. (*Brown v. Jackson*, 3 Wheaton, 450; *Oliver v. Piatt*, 3 *How.*, 396; *May v. LcClair*, 11 Wallace, 232; *Smith's Heirs v. Bank of Mobile*, 21 Alabama, 124; *Rogers v. Burchard*, 34 Texas, 441; *Bragg v. Paulk*, 42 Maine, 502; *Walker v. Lincoln*, 45; Maine, 67; *Doe v. Reed*, 5 Ills., 117; *Coe v. Persons Unknown*, 43 Maine, 452; *Martin v. Brown*, 4 Minn., 282; *Everett v. Ferris*, 16 Minn., 26; *Marshall v. Roberts*, 18 Minn., 405. But see *Graff v. Middleton*, 43 Cal., 341; *Jackson v. Fish*, 10 Johns., 456; 3d Wash. on R. P., 314, 417; 33 N. H., 22; 34 Miss., 18; 22 Ver., 104; 5 Iowa, 66; 11 N. H., 74; 23 Texas, 614, and other authorities cited.)

It would seem there is much in the authorities quoted, although they are somewhat conflicting, to sustain the positions assumed by him. At all events, whatever the fact may have amounted to, Burbank was cognizant from the records that his grantor had only "the right, title, interest, claim or demand" of *his* grantors, in and to the land.

In the case as properly before us, there is another point which claims attention. The defendants in their answers set up a certain quit claim deed, with special covenants of warranty, purporting to be executed by Moses S. Titus and Jane L. Titus, his wife, by Byron M. Smith, *their attorney in fact*, bearing date August 11th, 1860, conveying all *their right, title, interest, claim and demand* in and to the middle one-third of the S. W. quarter of said tract, and also one undivided third of the north half of said tract, with other land not involved in this suit.

As to this matter of defense, the findings of the judge are: First, that "at the date of its execution, the grantors had no interest whatever in the land." Secondly, that "there is nothing to show that Byron M. Smith was the attorney in fact of Mr. and Mrs. Titus, or had any authority from them to act in the premises."

This deed purports to have been made anterior to all our statutes and Codes. The Organic act itself was not approved until the following year. Assuming, however, that the rule at the time the conveyance was made, was like the rule of the common law, the power to execute the deed must itself have been by an instrument under seal. Certainly, at least, some instrument in writing, and capable of being recorded, was requisite. A power of attorney was a necessary link in the chain of title. Of what value was the deed, if there was no evidence of any authority to make it?

The last finding discloses an entire failure of proof as to its being the deed of Mr. and Mrs. Titus; and in weighing the case, it was very properly thrown out of the scales.

The copious briefs and arguments as to the construction, force and effect of this instrument, and as to whether its covenants enlarged the estate conveyed, so that the title after-

wards acquired by Jane Titus vested in the grantee, are palpably useless and supererogatory, for we cannot be called upon to interpret that which a party ·has entirely failed to prove, and which is therefore as much outside of the case as any instrument between strangers to the action.

An objection of defendant's, taken on the trial is incorporated in the decision of the judge, and relates to the introduction in evidence of the deed of Moses S. and Jane L. Titus to Byron M. Smith.    It was that "the certificate of acknowledgment is not in the form required by the statutes, as it does not show that the wife was examined separate and apart from her husband;" and secondly, that "there is no certificate of the official character of the notary before whom the deed purported to have been acknowledged."

The Court overruled the objection, remarking that "as between the parties to the deed, a certificate of acknowledgment is not essential.    The signatures to, and execution of the deed were proven by parol evidence, and the defect has been cured by an act of the Territorial Legislature, approved January 6th, 1873, which makes the deed admissible in evidence.    It is not necessary here to discuss the point as to what effect this act might have on the question of constructive notice, for under the evidence it is quite clear that the records furnished defendants no notice of plaintiff's rights, at the dates of their respective purchases.

We observe no error in overruling the objection.    It was not necessary (as correctly stated by the judge) to determine the applicability or efficacy of the statute indicated, as to the question of notice; for that deed was not recorded until May 14th, 1872, and it was to be considered in the same light as a prior unrecorded deed.    It is to be presumed from the findings that this conveyance was executed and acknowledged not within, but without the Territory.

From all the findings, embracing as they do, all the issues, the judgment of the said district court was warranted, and it must be                                          AFFIRMED.

Mr. Justice BENNETT concurs; Mr. Justice BARNES non-concurring.

Clay County vs. Simonsen, et al.

NOTE—Of authorities examined:—As to review on appeal, a judgment rendered upon a trial by the Court, a case must always be made; see Hunt v. Bloomer, 13 N. Y., 3d Kernan, page 341°; Newton v. Bronson, ibid, page 587. As to a deed of bargain, sail, and quit claim of the right, title, interest, and estate, see Touchard v. Crow, 20 Cal , 150; Muller v. Boggs, 25 Cal., 186. As 'to subsequently acquired property, in case of deed of the right, title, interest, etc., see San Francisco v. Lawton, 18 Cal., 476; Gee v. Moore, 14 Cal., 472; Morrison v. Wilson, 30 Cal., 344; Cadiz v. Majors, 33 Cal., 289; Barrett v. Briggs, 50 Cal., 655; Dalton v. Hamilton, 50 Cal., 423. See, also, Bigelow on Estoppel, 335, 346; Washburne on Real Prop., Vol. 3, page 404.