[File No. 6190.]

KATHERINA WERTH, Respondent, v. JACK T. WILLER, Appellant.

(250 N. W. 543.)

Opinion filed October 10, 1933.   Rehearing denied October 25, 1933.

*G. R. Brainard,* for appellant.

*Otto Thress,* for respondent.

CHRISTIANSON, J.   The controversy involved in this action arises out of the reservation of coal in a patent issued by the United States

government for a tract of land in Stark county in this state. The material facts are substantially as follows: On March 11, 1929, the plaintiff and defendant entered into a written contract whereby the plaintiff agreed to convey and assure to the defendant in fee simple, free of all encumbrances, by good and sufficient warranty deed, certain tracts of land in Stark county containing four hundred acres more or less according to the governmental survey thereof. By the terms of the contract the defendant agreed to purchase such tracts of land and to pay plaintiff therefor the sum of $8,000.00 as follows: $1,500.00 in cash; the remaining $6,500.00 to be paid thus: the defendant to sow and plant each year during the continuance of the contract at least one hundred and fifty acres in a marketable grain crop or as much more as could be profitably planted, and that of the gross proceeds therefrom one-half should be given to the plaintiff,—such proceeds to be applied, first, in the payment of interest and, second, in the reduction of the principal remaining unpaid on the contract. It was stipulated that all unpaid portions of the purchase price should bear interest at the rate of six per cent per annum. The contract also provided that the defendant should pay all taxes assessed and levied against the premises.

It is undisputed that the defendant paid to plaintiff $1,500.00 in cash at the time the contract was made and that he entered into possession of the premises under the contract and has since remained in possession. The evidence also shows that the defendant made substantial improvements on the premises and made certain other payments. The defendant, however, failed to pay the taxes for the year 1930 and the plaintiff paid them on December 3, 1931, the amount then paid aggregating $152.35. Thereafter, on December 24, 1931, plaintiff brought this action to cancel and terminate the contract on account of the alleged defaults of the defendant. Defendant made no appearance, and judgment was entered by default for the relief demanded in the complaint. Thereafter defendant asked to be relieved from the default. The motion was granted on the condition that he pay to the plaintiff the amount of the taxes she had paid, together with $5.00 for motion costs. The defendant complied with the order. Thereafter, on December 2, 1932, plaintiff served and later filed an amended complaint.

In such complaint the plaintiff alleges that she was and is the owner

in fee of the premises in question. The contract between the plaintiff and the defendant is set forth and it is alleged that the defendant made default by failing to pay the 1931 taxes against the premises, and that the plaintiff paid such taxes on or about October 1, 1932. It is further alleged that the defendant, during the year 1932, produced certain crops upon the land and failed to deliver any part thereof to the plaintiff; also that the defendant failed to pay interest on the unpaid portion of the purchase price and that by reason of these defaults on the part of the defendant the plaintiff has elected to, and does elect, to cancel and terminate the contract.

The defendant interposed an answer and counterclaim to the amended complaint. He admits the making of the contract and that he entered into possession of the premises and is still in possession thereof. He alleges that he paid the initial payment of $1,500.00 in cash; that he has paid taxes on the premises, made certain other payments, and, also, made permanent improvements thereon. The defendant denies that plaintiff is the owner in fee of the lands as alleged in the complaint, and alleges that plaintiff made representations to the defendant that she was such owner and that defendant relied upon such representation. The defendant further alleges that the defaults, if any, on his part are due solely to the fact that the plaintiff is not now, was not at the time the contract was made, and never will be, in position to convey title in accordance with the terms of the contract; that defendant only recently discovered such defect in plaintiff's title and disaffirms and rescinds the contract and offers to surrender the premises to the plaintiff and anything of value which he may have received thereunder. He further alleges that he was induced to enter into the contract by fraud and misrepresentation on the part of the plaintiff in this: that she represented that she had a fee simple title and could and would give a good and sufficient warranty deed clear of all encumbrances upon the performance by defendant of the stipulations of the contract to be by him performed; that defendant relied upon these representations and was induced thereby to make the initial payment of $1,500.00 and subsequent payments, including taxes, and to construct permanent improvements on the land. It is further alleged that the plaintiff is not seized in fee of the premises she has contracted to convey; that the patent issued by the United States government for a certain designated portion of

the land reserves all coal in the lands so granted, together with the right to prospect for, mine and remove such coal therefrom. Defendant asks judgment that plaintiff's action be dismissed; that the contract be rescinded; and that he be reimbursed for all sums paid with interest from the respective dates of payment and that he have a lien upon the premises for such sum. To this answer and counterclaim the plaintiff interposed a reply wherein she denied all matters set forth in the counterclaim.

The case was tried to the court upon the issues thus framed and resulted in a judgment in favor of the plaintiff. The judgment in effect provided that the contract be cancelled and terminated and that the defendant be adjudged to have no right, title or interest in the premises unless he removes the then existing default by paying to the plaintiff a certain stipulated sum aggregating the market value of one-half of the crop produced on the premises in 1932. The defendant has appealed and demands a trial anew in this court.

It is unnecessary to recite the evidence at length. It is sufficient to say that it does establish that the parties entered into a written contract for the purchase and sale of the land in question on March 11, 1929; also, that the defendant at that time paid to the plaintiff the sum of $1,500.00. The evidence further discloses that the plaintiff is the owner of the land, but that the patent issued by the United States government for a portion of the tract of land in question specifically reserves the title to all coal in the land, together with the right to prospect for, mine and remove, coal therefrom. The evidence further discloses that the land is underlaid with a vein of coal some eighteen inches thick and that the defendant has mined coal for his own use from such vein. The question therefore arises as regards the respective rights of the parties to this action in light of these undisputed facts.

The plaintiff invokes the principle that the vendor cannot be placed in default for defect of title or inability to convey, by tender of per-formance by the purchaser and demand for performance before the expiration of the time fixed by the contract for making a conveyance. The principle thus stated is generally recognized by the courts of the several states of the Union. The principle, however, is predicated upon the proposition that the vendor may, and probably will, be able to per-form and convey a title as contracted for at the time the contract re-

quires performance and that consequently, until that time has arrived, the vendee is in no position to complain.

The principle invoked by defendant is not, in our opinion, applicable in this case. This is not a case where a vendee seeks to rescind the contract and brings suit to recover the part of the purchase price he has paid because the vendor's title is defective. In this case the vendor is the moving party. She brought suit. She seeks to cancel the contract and to terminate all rights of the vendee thereunder on account of alleged defaults on his part. She alleges that she is the owner in fee simple of the tract. As a part of her case and as the basis of her right of action she introduced in evidence a written contract wherein she agreed to convey to the vendee an estate in fee, clear of all encumbrances.

It appears from the undisputed evidence that the plaintiff has agreed to convey to the defendant property and title to property which she, in all human probability, will be unable to convey. In these circumstances the defendant is not required to continue the risk of further payments. He may rescind the contract and recover the amount paid on the purchase price and for taxes, and moneys reasonably expended in permanent improvements, subject, however, to an adjustment for the use of the property. Prentice v. Erskine, 164 Cal. 446, 129 P. 585; Peoria Tractor Corp. v. Mason, 191 Iowa, 228, 182 N. W. 193; 2 Williston, Contr. §§ 875–879. See also Kurtz v. Busch, 3 N. J. Mis. R. 389, 128 Atl. 552.

Williston says:

"The same principle of justice which forbids the enforcement of a promise when the counter promise has been broken, also forbids enforcement when it is evident that the counter promise will be broken. Prospective failure of consideration is as good an excuse as actual failure. The only difficulty is to determine when it is sufficiently certain that there will be non-performance of a counter promise due in the future, to justify non-performance of a promise due in the present. Certainly it can make no difference in the justice of the excuse, what the reason for the apparent future non-performance may be. . . .

"Where the contract requires for its performance specific property or means of performance, prospective inability may arise from the non-existence, destruction or injury of that property, from the destruc-

tion of the means of performance, or from the inability of the contracting party to secure the subject-matter of the contract because the title is in another. . . .

"If one who contracts to sell specific property is not the owner of it, the buyer evidently incurs some risk that the contract will not be carried out when the time for performance comes, even though the seller desires to carry it out. Whether the buyer should be required to incur the risk depends upon whether it was one which should have been within his contemplation at the time he entered into the contract. There is always some risk that a contract cannot be performed. It may be supposed that the seller's lack of title existed (1), when the contract was entered into; or (2), subsequently. If the buyer was aware that the seller had no title when he entered into the contract, that fact can afford him no excuse for refusing to proceed with the contract, until the time comes for the seller to perform, or at least until it is evident that he will be unable to acquire the title which he has promised to convey. On the other hand, if the seller's lack of title was unknown to the buyer when he entered into the contract, the question must be asked whether a risk is being thrown upon him greater than he should have anticipated. This question must be answered in the affirmative unless the seller, though not owning the property, was in a position by contract, or otherwise, to obtain or perfect a title irrespective of the consent of any other party. . . .

"Where the seller is not wholly without title to the property which he has agreed to convey but his title is encumbered or defective in such a way that the buyer need not accept it unless the encumbrance is removed, the principle governing the situation is the same as where the seller is wholly without title, but the application of the principle is not so easy. If the defect cannot be removed it is clear that the buyer need not await the time of performance, but has a present excuse, at least if he asserts it promptly on discovering the facts. . . .

"The purchaser's right or excuse is obviously based on the principle of prospective failure of consideration which is applicable in actions of law as well as in suits for specific performance. It cannot be admitted that a vendor whose title is so defective as to justify a purchaser in inferring that the defect is not likely to be cured can compel the purchaser to wait until the day fixed for performance in order to

see whether by any chance the vendor may be able to cure the defect, on penalty of being subject to an action for damages." 2 Williston, Contr. §§ 875–879.

In Prentice v. Erskine, 164 Cal. 446, 129 Pac. 585, supra, the plaintiff covenanted to sell and the defendant agreed to buy certain real property. A portion of the purchase price was paid when the contract was made. The contract required the defendant to make future payments on the purchase price and also to pay taxes. He defaulted in both particulars. The plaintiff thereupon brought action to quiet title. The defendant answered and asserted, among other things, that the plaintiff was himself in default under the agreement because he was unable to give a clear title owing to the existence of a perpetual right-of-way over the land. He demanded judgment for the amount of the purchase price which he had paid and for the value of the permanent improvements he had made thereon. The court found that the plaintiff could not give a perfect title to the land; that the perpetual right-of-way for a public road in all probability would preclude the plaintiff from conveying such title. In its opinion the court said:

"In California it is the general rule that a defaulting vendee under an agreement of sale cannot complain because at a time prior to the maturity of the contract and the date fixed thereby for the delivery of a good and sufficient deed the vendor was not in a position to convey full title to the land. Joyce v. Shafer, 97 Cal. 336, 32 P. 320. See, also, Backman v. Park, 157 Cal. 607, 108 P. 686, 137 Am. St. Rep. 153, and authorities there cited. It is a harsh rule, and should not be unduly extended. If the only incumbrances upon the property were the easement for the irrigating ditch and the lien for the water tax, we might be constrained to hold, under the authorities, that the case would fall within the rule discussed above, but, as one of the defects in the vendor's title arose from the existence of a public servitude, we must conclude that plaintiff was himself in default, because that is the sort of cloud which in the nature of things he could not remove by any ordinary method of business negotiation. It would not be like a mortgage, for example, which might be extinguished by payment of the debt thereby secured, or like a lien for unpaid water rent which might be destroyed by settlement of the account. He could not either by adverse possession or by purchase take from the public the right to pass

over the land on a dedicated highway. He was as completely helpless and hopeless of conveying a perfect title at any time as if the whole tract had been taken for use as a public park. The vendee might have rescinded the contract at any time, even though the time for final payment had not arrived because the vendor, in the nature of things, never could offer a perfect title to him."

The language and reasoning of the California court is equally applicable here. There is no claim that there is any likelihood that the plaintiff in this case at any time can convey the title to the defendant which she agreed to convey. There is no claim that she has acquired or that there is any reasonable probability that she can acquire the coal rights reserved by the United States government. Under the facts in this case the defect here is far more serious than was the defect in the title in the California case. It appears from the undisputed evidence in this case that the plaintiff has contracted to convey to the defendant property, a material portion of which she does not own and to which, in all human probability, she will be unable to obtain title. In these circumstances the defendant was not required to continue to make payments. He might rescind the contract and ask for and obtain such relief as the facts warrant. 2 Williston, Contr., supra; Prentice v. Erskine, 164 Cal. 446, 129 Pac. 585, supra.

It is asserted by the plaintiff that the defendant has waived all right to repudiate or rescind. It is said that he was charged with notice of the defects in plaintiff's title. This argument is unsound. The defendant was entirely justified in accepting plaintiff's covenants as to the title that she would convey. Prentice v. Erskine, supra; Key v. Vidovich, 58 Cal. App. 710, 209 Pac. 375; Morgan v. Dibble, 43 Cal. App. 116, 184 Pac. 704. The defendant covenanted to convey a title in fee clear of all encumbrances. There was no duty resting on the vendee to examine the title or to point out any defects therein. The evidence discloses that plaintiff had no actual knowledge of the coal reservation in the patent from the United States government until in October, 1932, long after this action had been instituted. We are of the opinion, therefore, that the defendant is entitled to rescind the contract and to recover the payments made. He is, also, entitled to recover the amount reasonably expended in permanent improvements not exceeding, however, the value of such improvements and the amount

expended in taxes. He must, of course, compensate the plaintiff for what he has received, namely, for the use and occupation of the land.

Accordingly, the judgment appealed from must be and it is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

BIRDZELL, Ch. J., and BURR, NUESSLE and BURKE, JJ., concur.