[File No. 7120]

E. C. STONE, Appellant, v. THEO. BARTSCH and Osborne-McMillan Elevator Company, a foreign Corporation, Respondents.

(39 NW2d 1)

722

Opinion filed August 26, 1949.  Rehearing denied Sept. 15, 1949.

*H. L. Halvorson* and *H. L. Halvorson,* Jr., for appellant.

*Victor V. Stiehm* and *O. B. Herigstad,* for respondents.

BURKE, J. In his complaint in this action, plaintiff alleged that the defendants had converted certain grain owned by him of the value of $1290.00 and asked damages in that amount. In separate answers the defendants alleged that the grain in question had been raised upon land that the defendant, Bartsch, had leased from one R. N. Hoenisch and that it was the property of Bartsch and not of the plaintiff, Stone. The case was brought on for trial before a jury in the District Court of McHenry County. After both sides had rested, each of the defendants moved for a directed verdict. The trial judge granted the motion as to the defendant, Osborne-McMillan Elevator Company, and denied it as to the defendant, Bartsch. Judgment of dismissal as to the elevator company pursuant to the directed verdict was immediately entered. The case between Stone and Bartsch was submitted to the jury and a verdict for the dismissal of the action was returned. Plaintiff immediately moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and judgment pursuant to the verdict of the jury was thereafter entered. Plaintiff has appealed from both judgments and from the order denying the alternative motion. Plaintiff sought to hold the elevator company liable solely upon the ground that it purchased the grain from Bartsch. It follows that, if the judgment of dismissal in favor of Bartsch is to be affirmed, there is no case against the elevator company. We shall therefore consider first the issues as they arise between the plaintiff and Bartsch.

The land in question is an eighty acre tract lying in McHenry County. It was the property of R. N. Hoenisch. During the farming seasons of 1942 and 1943, plaintiff, Stone, had leased the land from Hoenisch. On September 30th, 1943, the defendant, Bartsch, wrote Hoenisch asking if he could rent the land for

the farming season of 1944. On October 2nd, 1943, Hoenisch wrote letters to both Stone and Bartsch. The letter to Stone was as follows:

"Mobridge, S. D.
Oct. 2nd, 1943

Dear Dr.

Have not heard from you this year and all I ever got was that you put the land in and will thank you much to send me just a postal card telling me what has been done and if you will want it for 1944. . . .

So kindly advise me if you will want to rent the land for 1944, and also let me know how that rye turned out or your expectations.

Yours very truly,
(signed) R. M. Hoenish"

Dr. Stone replied in a letter, dictated to and signed by his wife, as follows:

"Dear Mr. Hoenisch:

This is to advise you that the rye dried out and we did not cut it. We won't be able to handle it next year on account of the labor situation so please try and get another renter for next year.

Yours very truly,
E. C. Stone, M. D.
(signed)  A. Stone."

Hoenisch's letter to Bartsch read:

"Mobridge, S. D.
Oct. 2nd, 1943

Mr. Theodore Bartsch
Bergen, N. D.
Dear Sir:

I have your letter of the 30th and note that you wish to rent that 80 acre tract of land I have in Land Twp.

This was supposed to be rented up to now for the year to Dr. Stone but I see no reason why you cannot have it for the year 1944 if you wish to have it, my terms on this have been ever since I left Balfour, one-fourth of the crop delivered to an ele-

vator either in Bergen or Balfour, you to furnish the seed and do all. . . .

So let me know as soon as you can if the above is satisfactory to you,

Yours very truly,
(signed) R. M. Hoenisch"

To this letter Bartsch replied:

"Bergen, No. Dak.
Oct. 7, 1943

Dear Sir:

Yes, I will take the land on ¼ share and will deliver it to any elevator. . . .

Yours truly,
(signed by Bartsch's
wife at his direction) Theodore Bartsch"

On October 19th, 1943, Hoenisch write Bartsch:

"Mobridge, S. D.
Oct. 19, 1943

Dear Mr. Bartsch:
*    *    *

Yes you may go ahead and put in that piece of land for next year on a basis of One-fourth of the crop net to me, you to furnish all the seed and do all the work. This letter will be as good as a contract so just go ahead and use your own judgment on what to put in and where to put it in, there is a couple of acres of hay that you can have for the cutting.
*    *    *

Yours very truly,
(signed) R. M. Hoenisch"

In April 1944, Stone sent his employees upon this land to plow and seed it. Bartsch upon discovering Stone's men upon the land showed them his letter (of Oct. 19th) from Hoenisch and ordered them off. The men thereupon suspended operations for two or three days. Later they returned and finished the plowing and seeding. Bartsch testified that he did not learn that the seeding operations had been resumed until after they

were completed. Stone testified that his employees did not tell him that Bartsch had shown them his written authority to farm the land.

In late April or early May Hoenisch came to North Dakota. Bartsch testified that he and Hoenisch went to see Stone; that at a meeting in Stone's office Hoenisch told Stone he had leased the land to Bartsch; that he (Bartsch) then offered to pay Stone for the seed and plowing and that Stone refused the offer. Stone denied that such a meeting took place.

In July 1944, Stone began negotiations with Hoenisch for the purchase of this land. On July 7th, Hoenisch wrote to Stone as follows:

"Mobridge, S. D.
July 7th, 1944

Dear Doc:

\*   \*   \*

As to the land I feel I will have to have $1400.00 for the 80 now as it was always a good piece of land and I paid $2000.00 for it years ago when land was not worth as much as it is today, the amount will include my share of the 1944 crop but this will have to be taken at once.

If I hold it until after the harvest and the crop is taken off then I will take $1200.00 for it.

I think it best for you to buy this land as you have adjoining lands and it will improve your interests there and then again I doubt if Bartsch will try and make any trouble about his contract I really want to get out of that deal if I possibly can and if you do not purchase the land you will have to go to him and make some kind of settlement. . . .

Yours very truly,
(signed) R. M. Hoenisch"

Thereafter by a deed dated July 12th, 1944, Hoenisch conveyed the land to Stone. Stone paid for the land by a check dated July 16th, 1944, and claimed that the deed had been delivered to him the same day. The check was not paid until October 10th, 1944, nor was the deed recorded until October 10th, 1944.

In August 1944, Bartsch went upon the land, combined the grain and sold it to the defendant, Osborne-McMillan Elevator Company as the crop of Bartsch and Hoenisch. Stone watched Bartsch combine the grain and made no complaint. He made no attempt at that time to discover where the grain was being sold or to give anyone notice that he claimed any interest in it. The elevator company paid Barsch for the crop and Bartsch sent Hoenisch a check for his one-fourth share. Hoenisch endorsed this check and forwarded it to Stone.

In November 1944, Stone made demand upon Bartsch and the Osborne-McMillan Elevator Company for the return of the grain allegedly converted by them and, upon their failure to make return, commenced this action in conversion.

Error is specified on this appeal upon the admission in evidence of the correspondence between Bartsch and Hoenisch, upon the instructions of the trial judge and upon the trial judge's refusal to give certain requested instructions.

Plaintiff contends that the admission of exhibits 4 and 5, which are Hoenisch's letters to Bartsch of October 2, 1946 and October 19th, 1943 respectively, was error upon the ground that there was no showing "that said letters were ever called to the attention of the plaintiff or that the plaintiff had any knowledge thereof."

These letters were offered for the purpose of establishing a lease from Hoenisch to Bartsch, of the land with which we are here concerned. Whether such a lease existed was one of the issues in this lawsuit and the letters were competent and relevant evidence upon that issue. Whether plaintiff had notice of any lease is an issue separate and distinct from that of the existence of the lease.

The first instruction which plaintiff asserts was error was as follows:

"The plaintiff must satisfy you by a fair preponderance of the evidence that he had a valid lease on the 80 acre tract in question for the farming season of 1944 in order to recover, and in case of his failure so to do your verdict must be for the defendant for the dismissal of this action."

"It is immaterial whether plaintiff bought this 80 acres with or without the landlord's one-fourth share of the crop. If defendant Bartsch had a lease on this eighty acres for 1944 then neither Stone nor Hoenisch could do anything that would take away Bartsch's right to the three-fourths of the crop in question."

Plaintiff claimed title to the crop in question both by virtue of ownership of the land and by virtue of an alleged lease. Assuming the truth of plaintiff's testimony that the deed to the land was delivered to him on July 16th, he nevertheless took title thereto on that day subject to any outstanding lease of which he had notice. Oliver v. Olmstead, 112 Mich 483, 70 NW 1036; Remm v. Landon, 43 Ind App 91, 86 NE 973; King v. Kaiser, 126 Md 213, 94 A 780; Gosch v. Vrana (Tex Civ App) 167 SW 757. It was established by uncontroverted and conclusive evidence that Hoenisch and Bartsch had consummated a contract on October 19th, 1943, by which Bartsch was granted the possession and use of Hoenisch's land for the year 1944, in consideration of one-fourth of the crop which was to be delivered to Hoenisch. Such a contract is a lease. Minneapolis Iron Store Co. v. Branum, 36 ND 355, 162 NW 543, LRA 1917E 298. There is in the record conclusive evidence that Stone had either actual or constructive notice of this lease. In the letter Hoenisch wrote to Stone on July 7th 1944, he stated:

"As to the land I feel I will have to have $1400.00 for the eighty now as it was always a good piece of land and I paid $2000.00 for it years ago when land was not worth as much as it is today, *the amount would include my share of the 1944 crop.*"

This statement that the purchase price would include his share of the 1944 crop was notice to Stone that there was an outstanding lease for the 1944 farming season. If Stone did not have such a lease himself it was notice that some other person did.

In the same letter Hoenisch also stated:

"I doubt if Bartsch will try and make any trouble about his contract I really want to get out of that deal if I possibly can and if you do not purchase the land you will have to go to him and make some kind of settlement."

The latter statement is actual notice to Stone that some sort of contract existed between Bartsch and Hoenisch in connection with this land. Section 1-0124 ND Rev Code 1943 provides:

"Constructive notice shall mean notice imputed by law to a person not having actual notice."

Section 1-0125 ND Rev Code 1943 provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

A purchaser of land who at the time of purchase has knowledge of the existence of a contract concerning such land will be charged with notice of the contract's terms. Thompson, Real Property, Permanent ed 8, § 4496. In Wahl v. Stoy, 72 NJ Eq 607, 66 A 176, 179 it was said:

". . . if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate inference that he acquired the further information which constitutes actual notice. This inference is not a conclusive presumption of law; it may be defeated by proper evidence. Yet, if it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim, then the inference that he acquired the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry, that he made the inquiry, and arrived at the truth. And the same result follows if the party has sufficient knowledge to require him to make the inquiry, if he neglects to do it, or, having begun it, fails to prosecute it in a reasonable manner. The information need not be so full and detailed as to communicate a complete description of the opposing interest. It is sufficient if it asserts the existence of a right or interest as a fact. If a vendor informs the vendee that the subject-matter is subject to an outstanding lien

or equitable claim, such information is sufficient. It need not state all the particulars or impart complete knowledge. It is enough if he has reasonable ground to believe that a conflicting right exists as a fact."

It is clear therefore than plaintiff, having had notice of Bartsch's outstanding lease, at the time he purchased the land, took the land subject to the lease and acquired no title to the lessee's share in the growing crops by virtue of his purchase. When plaintiff's claim to this crop by virtue of his deed, was eliminated from the case there remained only his claim as lessee. Plaintiff asserted, with very little evidence to support his assertion, that he had leased the tract of land in question from Hoenisch for the 1944 season; that without knowledge of Bartsch's lease he entered into possession of the land, plowed it and sowed a crop thereon and that in these circumstances he had title to the tenant's share of the crop.

It is unnecessary for us to pass upon the correctness of the legal conclusion contained in this assertion. It is sufficient to say that the trial judge accepted plaintiff's view and charged favorably to him upon this issue. There was clearly no prejudice. Plaintiff had surrendered his prior lease in the fall of 1943. If he entered upon the land in the spring of 1944 without a new lease he was a trespasser and acquired no title or interest in any crops he sowed thereon as such. Wadge v. Kittelson, 12 ND 452, 462, 97 NW 856.

Plaintiff's challenge to other instructions and his claim of error because of the refusal of the trial judge to give requested instructions involve the identical legal principles above discussed. It would serve no purpose to consider them at length in this opinion. In view of what we have already said, neither the challenged instructions nor the refusal of requested instructions constituted prejudicial error.

Since no prejudicial error has been shown the judgment of the district court dismissing the action against the defendant, Bartsch, must be affirmed.

It follows that no case remains against the defendant, Osborne-McMillan Elevator Company. While the direction of a verdict in favor of the elevator company was error, since it was a direct

violation of the procedural requirements laid down in Section 28–1509, 1947 Supp ND Rev Code 1943, the error was without prejudice. Romkey v. Barnes, 72 ND 127, 5 NW2d 79; Ellsworth v. Martindale-Hubbell Law Directory, 69 ND 610, 289 NW 101. Therefore the judgment of dismissal in favor of the defendant, Osborne-McMillan Elevator Company is also affirmed.

NUESSLE, Ch. J., MORRIS and CHRISTIANSON, JJ., and MILLER, District J., concur.

BURR, J., did not participate.