**BURLINGTON NORTHERN, INC.,**
**Plaintiff and Appellee,**

v.

**L. P. HALL, the unknown heirs of L. P. Hall, Lorena Vashti Hall, Ralph Mosser, Meta C. Mosser, Donald J. Hall, Wallace Hall, Leonard W. Hall, Mary Louise Joiner, Linas V. Hall, Martha Lou Hall, Edith Imoe, and all other persons unknown claiming any estate or interest in, lien or encumbrance upon, the property described in the Complaint, Defendants and Appellants.**

**Civ. No. 10138.**

Supreme Court of North Dakota.

July 15, 1982.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for plaintiff and appellee; argued by John Michael Nilles, Fargo.

Harold H. Halstead, Mercer Island, Wash., and Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellants Hall; argued by Harold H. Halstead, Mercer Island, Wash.

Freed, Dynes, Reichert & Buresh, Dickinson, for defendants and appellants Mosser; argued by George T. Dynes, Dickinson.

SAND, Justice.

This is an appeal by the defendants, Ralph Mosser and Meta C. Mosser [hereinafter referred to as Mossers], and the heirs of L. P. Hall [hereinafter referred to as Hall heirs], from a district court judgment quieting title to mineral rights under 12 sections (approximately 7,750 acres) of land located in Golden Valley County, North Dakota, in Burlington Northern, Inc. [hereinafter referred to as Burlington Northern], and from a district court order denying the Hall heirs' and Mossers' motion pursuant to Rule 52(b), North Dakota Rules of Civil Procedure.

As of 1 April 1944 the records in the office of the Golden Valley County register of deeds reflect that Northwestern Improvement Co. [hereinafter referred to as Northwestern], was the named owner of the entire fee simple estate in the 12 sections of land and minerals. In 1944 Mossers entered into a contract for deed to buy the 12 sections of land from Northwestern.[1] The contract for deed was dated 15 April 1944 and was not recorded by either Mossers or Northwestern; however, Mosser received a duplicate original of the contract. The contract for deed provided, in relevant part, as follows:

"... excepting and reserving unto the vendor [Northwestern] its successors and assigns forever all minerals of any nature whatsoever including coal, iron, natural gas and oil ..."

In 1948 Mossers listed for sale the 12 sections of land involved in the instant action along with an additional 5,000 acres of real property. A contract for deed dated 1

December 1948 between Mossers and L. P. Hall for the 12 sections and the additional 5,000 acres was executed by Hall on 14 December 1948 and by Mossers on 27 December 1948.

The testimony of Ralph Mosser reflects that his real estate agent prepared the contract for deed and that no attorneys assisted in the transaction because "he [Hall] was a good religious fellow, and I figured I was on the square. I didn't think we needed any." The contract for deed was recorded on 12 January 1949. It recited the following reservation of minerals unto Mossers:

"Reserving unto the first parties [Mossers], their heirs and assigns 50% of all mineral, oil, and gas rights on all of the above described lands where such rights are available."

On 27 December 1948, the same day Mossers executed the contract for deed with L. P. Hall, Mossers sent Northwestern their (Mossers') copy of the 1944 contract for deed and their final payments on the contract and, in fulfillment of its 1944 contract for deed, Northwestern deeded the 12 sections to Mossers by warranty deed dated 29 December 1948 and recorded 23 February 1949. The warranty deed from Northwestern to Mossers provided, in relevant part, as follows:

"... excepting unto the grantor [Northwestern], its successors and assigns, forever, as heretofore conveyed by the grantor, all minerals of any nature whatsoever, including coal, iron, natural gas and oil ...."

Mossers, by a warranty deed dated 29 August 1951, and in fulfillment of their 1 December 1948 contract for deed, deeded the 12 sections to Hall. That warranty deed was recorded on 7 September 1951. The warranty deed saved and excepted unto the Mossers:

"... fifty percent (50%) of all available or remaining minerals of any nature whatsoever including coal, iron, natural gas and oil ...."

1. Two separate contracts for deed were executed; however, they contained the same terms and were for two tracts of land, one covering three sections and one covering nine sections. For purposes of this appeal we will treat the two contracts for deed as one.

Meanwhile, Northwestern, through a mineral deed acknowledged 20 January 1949 and recorded 29 April 1953, deeded the minerals in the 12 sections of land to Northern Pacific Railway. Burlington Northern is the successor in the interest of Northern Pacific Railway Co. L. P. Hall died on 2 February 1960 and Donald J. Hall, Leonard W. Hall, Mary Louise Joiner, Linas V. Hall, Edith Imoe, and Wallace Hall, individually and as guardian of the person and estate of Martha Lou Hall, an incompetent person, are successors to the interests of L. P. Hall and his wife, Lorena Vasthi Hall.

The instant action was commenced by Burlington Northern to quiet title to the mineral rights in the 12 sections of land.[2] Mossers' answer sought to reform and remove the mineral exceptions and reservations from the 1944 contract for deed and the 1948 warranty deed between themselves and Northwestern because they alleged the title instruments incorrectly expressed their true agreement. The Hall heirs' answer asserted that they were entitled to title to the minerals under the theories of equitable estoppel, adverse possession of both the surface and mineral interests, laches, and priority under the recording acts. The Mossers also cross-claimed against the Hall heirs for one-half of the mineral title, if any, that the Hall heirs obtained as a result of their claims against Burlington Northern.

The district court, after a bench trial, issued a memorandum opinion and findings of fact, conclusions of law and order for judgment and judgment in which it found that Burlington Northern was the owner in fee simple of all the minerals in or upon the 12 sections of land.

The Hall heirs and Mossers made separate post-trial Rule 52(b), NDRCivP, motions to amend and make supplemental findings of fact and conclusions of law. The district court denied those motions; however, the district court did find as an additional fact that if the Hall heirs prevailed on any of their claims against Burlington Northern, Mossers were then entitled to one-half of whatever mineral interests the Hall heirs were entitled to. The Hall heirs and Mossers appealed from the judgment and from the order denying their Rule 52(b) motions.

The Mossers apparently have abandoned their claim to reform the 1944 contract for deed and 1948 warranty deed between themselves and Northwestern and have raised only one issue on this appeal. That issue is whether or not they are entitled to one-half of the minerals, if any, that this Court determines belong to the Hall heirs. The Mossers conceded that if the Hall heirs are not successful on their claims against Burlington Northern, then Mossers cross-claim against the Hall heirs and their (Mossers) subsequent appeal is moot. Consequently, we will initially consider the issues raised by the Hall heirs.

The Hall heirs raised several alternative contentions for our consideration; however, these contentions all related to whether or not the trial court erred in quieting title to the minerals in the 12 sections of land in Burlington Northern.

The district court found and concluded that on the date of the contract for deed between Mossers and L. P. Hall, 1 December 1948, L. P. Hall was "chargeable with actual, constructive or implied knowledge of the terms of the 1944 contracts between Mossers and Northwestern." The district court found that on that date Northwestern was the record owner of the land and minerals; that L. P. Hall was contracting to purchase from a person (Mossers) with no record title; that given those facts, L. P. Hall had a duty to inquire of the title held by Mossers and was chargeable with knowledge of everything a diligent inquiry would have disclosed; that in the absence of an inquiry by L. P. Hall of the record owner, Northwestern, L. P. Hall should have asked to see Mossers' unrecorded contract for

---

2. The Hall heirs' brief points out that a determination of title to the south half of one of the sections should be excluded from this case because that land is owned by a Mr. Tescher who is not represented by counsel for either the Mossers or Hall heirs and who was not joined as a defendant by Burlington Northern.

deed and Hall was not entitled to rely on the representation that they (Mossers) were buying the land and minerals on contract from Northwestern without asking Mossers to show him the contract for deed.

The Hall heirs contended that the major error of law made by the trial court related to the conclusion that L. P. Hall was chargeable with constructive notice of the terms of the 1944 contract between Mossers and Northwestern. The Hall heirs cited *Werth v. Willer*, 64 N.D. 119, 250 N.W. 543 (1933), to support their assertion that L. P. Hall, as a vendee, had no duty to examine Mossers' title or point out any defects therein. The Hall heirs point out that they claim under an instrument recorded on 12 January 1949, and Burlington Northern claims under mineral deeds first recorded on 29 April 1953.

Our analysis of the issues raised by the Hall heirs requires us to initially consider the knowledge, actual or constructive, or duty of inquiry attributable to L. P. Hall at the time the contract for deed between Mossers and Hall was executed, 1 December 1948. At that time the Mossers' interest in the land was traceable through an unrecorded instrument executed between themselves and Northwestern, a copy of which was in the hands of Mossers.

An unrecorded instrument is valid as between the parties and those who have notice thereof. NDCC § 47–19–46. Notice shall be either actual or constructive. NDCC § 1–01–22. Actual notice consists of express information of a fact. NDCC § 1–01–23. Constructive notice means notice imputed by the law to a person not having actual notice. NDCC § 1–01–24; *Stone v. Bartsch*, 76 N.D. 721, 39 N.W.2d 1 (1949). NDCC § 1–01–25 describes as follows what is deemed constructive notice:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

See also, *Stone v. Bartsch, supra.*

■ A purchaser of land who, at the time of purchase, has knowledge of the existence of a contract between the vendor and a third party concerning the land is charged with notice of the terms of the contract between the vendor and that third party. *Stone v. Bartsch, supra.*

■ One who has knowledge of the facts sufficient to put a prudent person upon inquiry with regard to the existence of an unrecorded deed, and fails to make such inquiry, cannot claim protection as a bona fide purchaser under the recording act. *Shauer v. Alterton*, 151 U.S. 607, 14 S.Ct. 442, 38 L.Ed. 286 (1894); *Agriculture Credit Corp. v. State*, 74 N.D. 71, 20 N.W.2d 78 (1945); *Doran v. Dazey*, 5 N.D. 167, 64 N.W. 1023 (1895).

■ On the date of the execution of the contract for deed between Mosser and Hall, 1 December 1948, Mossers had in their possession a copy of the unrecorded 1944 contract for deed through which Mossers were purchasing the property from Northwestern. A portion of the contract for deed, as previously set out, specifically reserved unto Northwestern "all minerals of any nature whatsoever including coal, iron, natural gas and oil." On 1 December 1948 L. P. Hall had constructive notice of the records in the register of deeds' office. These records established that Northwestern was the record owner and that Mossers had no recorded interest in the land. These are facts sufficient to put a prudent person upon inquiry concerning what right Mossers had in the property. Such an inquiry would have necessarily revealed the terms of the contract for deed. Based on these factors, we agree with the trial court that on 1 December 1948 Hall was chargeable with constructive notice of the terms of the 1944 contract for deed between Mossers and Northwestern and that Hall purchased the land in question with notice that Northwestern had reserved the mineral interests.

The Hall heirs cited an excerpt from *Werth v. Willer*, 64 N.D. 119, 250 N.W. 543 (1933), as to the applicable duty of a vendee to make inquiry wherein at page 547, this Court said that:

"There was no duty resting on the vendee to examine the title or to point out any defects therein."

The Hall heirs also cited the following excerpt from 28 Am.Jur.2d *Estoppel and Waiver* § 97, page 752 to support their position:

"Constructive notice of the actual condition of a title is not imputed, where a deed which would have disclosed the real facts had not been recorded in the usual manner or where the records themselves were misleading with respect to those facts."

We believe *Werth v. Willer, supra,* and the authorities cited in 28 Am.Jur.2d are not applicable to the instant case.

The recitation of facts in *Werth v. Willer, supra,* sets forth that the vendor brought an action against the vendee to cancel and terminate a written contract to convey certain tracts of land by warranty deed. The vendor brought the action to cancel and terminate because the vendee failed to pay taxes against the land for one year and failed to deliver a part of the crops for one year to the vendor as required by the contract between the parties. The vendee counterclaimed and alleged that the defaults were due to the fact that the vendor could not, and never would, be in a position to convey title in accordance with the contract because the United States government, by a previous patent, had reserved all coal in the land. This Court held that the vendee was entitled to rescind.

One of the issues raised by the vendor in the *Willer* case was that the vendee had waived all rights to rescind because he was charged with notice of the defects in the vendor's title. This Court stated that the vendee was justified in accepting the vendor's covenants as to the title she could convey (title in fee clear of all encumbrances) and there was no duty within the context of a rescission action resting on the vendee to examine the title or point out any defects therein. Although the issue is not before us, we believe those statements may be applicable to an action to rescind between a vendor and vendee. However, the instant action is an action to quiet title and involves a third party's claim to title. It is not a question, assuming the factual situation would warrant it, whether or not L. P. Hall could rescind his contract with the Mossers. Rather, the question is whose interests are superior, and in instances such as this, we believe the rule of law set forth in *Stone v. Bartsch, supra,* and the previously set out authorities is applicable.

We also believe the authorities cited in the footnotes of the quote from 28 Am. Jur.2d are distinguishable, and we note that the same source (28 Am.Jur.2d *Estoppel and Waiver* § 98, p. 753) provides in a later paragraph as follows:

"Thus, where a person is found in possession of real property without any title of record, good faith and common prudence require a purchaser or mortgagee to inquire under what title he holds, and if he fails to do so he takes the title subject to the equities of the parties in possession."

Based on this, we believe that L. P. Hall had a duty to inquire as to the title held by Mossers and he was chargeable with the information that a diligent inquiry would have disclosed. Accordingly, we believe L. P. Hall had constructive notice that Northwestern reserved the mineral interests when the land was conveyed to the Mossers.

The Hall heirs asserted that because of the deliberate failure of Northwestern to record its contract for deed with Mossers and because of Burlington Northern's deliberate failure to record its deed seasonably, Burlington Northern should be equitably estopped from asserting title to the prejudice of the Hall heirs.

In determining whether or not a party should be estopped, this Court has consistently returned to the rule first set out in *Gjerstadengen v. Hartzell,* 9 N.D. 268, 83 N.W. 230, 232 (1900):

"The rule as to the requisites of an estoppel in pais as applied to the title to realty which appeals to us as the most equitable to all parties is that announced by Field, J., in *Boggs v. Mining Co.,* 14 Cal. [279], on page 367. He said: 'It is undoubtedly

true that a party may in many instances be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property it must appear: First, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive or with such careless and culpable negligence as to amount to constructive fraud; *third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge*; and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved. \* \* \* There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title; the effect of the estoppel being to forfeit his property, and transfer its enjoyment to another.' " [Emphasis added.] See also, *Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D.1981); *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976); *Cranston v. Winters*, 238 N.W.2d 647 (N.D.1976); *Sittner v. Mistelski*, 140 N.W.2d 360 (N.D.1966).

■ We believe that the Hall heirs' claims as to equitable estoppel must fail because they have not met the third requirement set out above. That requirement is that they were destitute of all knowledge of the true state of title and of the means of acquiring such knowledge. L. P. Hall had a duty to inquire of Mossers by what right they were selling the property and to follow up with investigation in a manner and to the extent that would have been suggested to a prudent person by the contents of the record title. Such an inquiry would have established that Northwestern had reserved the mineral interest in the land when they conveyed the property to the Mossers. Although the railroad deliberately may not have recorded its mineral

deed, a finding upon which we express no opinion, we believe the fact that the deeds were unrecorded is of little significance because L. P. Hall had constructive notice of the mineral reservation in the Northwestern-Mossers instrument. Based on this, we believe the Hall heirs' reliance upon the doctrine of equitable estoppel is unfounded.

The next issue raised by the Hall heirs is that L. P. Hall and his heirs acquired title in the mineral rights in the twelve sections of land through adverse possession. In conjunction with this issue, the Hall heirs contended that they, or their predecessor, L. P. Hall, were in actual, open, adverse and undisputed possession of the lands and paid the taxes levied for the statutory period. See, NDCC § 47–06–03. Additionally, the Hall heirs asserted that L. P. Hall entered the land under a claim of title founded upon a written instrument. See, NDCC §§ 28–01–08 and 28–01–09. Therefore, the Hall heirs claimed they were entitled to a decree of title by adverse possession.

■ A mineral estate may be separated from the surface estate and ownership of the mineral estate may exist separately and distinctly from the surface estate. Such severance may be accomplished by a conveyance, reservation or exception of the mines and minerals. *Beulah Coal Mining Co. v. Heihn*, 46 N.D. 646, 180 N.W. 787 (1920).

■ Where there has been no severance of the mineral estate from the surface estate, the title owner of the realty also owns the minerals beneath the realty. *Payne v. A. M. Fruh Co.*, 98 N.W.2d 27 (N.D.1959); *Smith v. Nyreen*, 81 N.W.2d 769 (N.D.1957).

■ Where there is a severance of the mineral estate from the surface, the title to one cannot be acquired by adverse possession of the other, and possession of the surface under color of title with payment of taxes for the statutory period does not constitute possession of the severed minerals and is not adverse as to the title holder of the minerals. *Bilby v. Wire*, 77 N.W.2d 882 (N.D.1956); *Beulah Coal Mining Co. v. Heihn, supra*.

In this instance there was a severance of the mineral estate from the surface estate and L. P. Hall had at least constructive notice of that severance. Accordingly, we believe L. P. Hall's and the Hall heirs' possession of the surface estate does not constitute adverse possession of the severed minerals.

The Hall heirs also asserted that they were entitled to a decree of title to the mineral estate by adverse possession because they, and others with their permission, mined coal from some of the sections of land for the required time. The mining of the coal was, at times, done by using dynamite blasting. Thus the Hall heirs asserted that because they mined the coal, and because coal is a mineral, they were in adverse possession of the mineral estate.

The acquisition of the title to severed minerals by adverse possession requires the taking of possession of the minerals by drilling, or conducting other mining activities. 1 Williams and Meyers, Oil & Gas Law, § 224.1, p. 340, citing *Gerhard v. Stephens*, 68 Cal.2d 864, 69 Cal.Rptr. 612, 442 P.2d 692 (1968). The case of *Gerhard v. Stephens*, 69 Cal.Rptr. at 640, 442 P.2d at 720 indicates that the drilling or other mining activities must be "sufficient to impart to the true owner notice of an adverse claim." [3]

To be entitled to a decree of adverse possession requires that the property of another be held by open and hostile possession for a specified time. *Cranston v. Winters, supra*. In order to be adverse, the acts upon which the claimant relies must not only be actual "but also visible, continuous, notorious, distinct, and hostile and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Martin v. Rippel*, 152 N.W.2d 332, 338 (N.D.1967). The burden of proving adverse possession is on the person alleging it and must be established by clear and convincing evidence. *Hodny v. Hoyt*,

243 N.W.2d 350 (N.D.1976); *Cranston v. Winters, supra; Martin v. Rippel, supra.*

The determination of whether or not there has been an adverse use is a question of fact. *Mohr v. Tescher*, 313 N.W.2d 737 (N.D.1981); *Backhaus v. Renschler*, 304 N.W.2d 87 (N.D.1981).

In this instance, the district court made the following finding of fact:

"32. The extraction and use by the Hall family of coal from the banks of the Beaver Creek was on a relatively small scale and only for domestic purposes, and was therefore not adverse or hostile to the interests of the owner of the mineral estate, Northwestern Improvement Company and its successors."

Keeping in mind that adverse possession must be shown by clear and convincing evidence and the acts must be of "such a character as to unmistakably indicate an assertion of claim of exclusive ownership," we believe that the finding that the use of the coal was for domestic purposes and was not adverse or hostile to the interest of the mineral estate owner was not clearly erroneous. NDRCivP 52(a).

The next issue raised by the Hall heirs is that the trial court erred in failing to find and conclude that the successors of L. P. Hall were entitled to a decree of mineral ownership in the twelve sections by applying the North Dakota Recording Act and the priority rules thereunder. The Hall heirs point out that L. P. Hall first recorded his instrument of title on 12 January 1949 and that Northern Pacific Railway (successor to Burlington Northern) first recorded their instruments under which they claimed title on 29 April 1953. The Hall heirs asserted that an innocent purchaser [L. P. Hall] can take a better title than his grantor [Mossers] had by the workings of the recording act. See, *N. P. Railway Co. v. Advance Realty Co.*, 78 N.W.2d 705 (N.D. 1956); *Northwestern Improvement Co. v. Norris*, 74 N.W.2d 497 (N.D.1955).

---

**3.** We note that some courts have held that the taking of minerals for domestic purposes will not start the running of time limitations for purposes of adverse possession. See e.g.,

*Ward v. Woods*, 310 S.W.2d 63 (Ky.1958); *Central Trust Co. v. Harless*, 108 W.Va. 618, 152 S.E. 209 (1930); see also, 1 Williams and Meyers, Oil & Gas Law, § 224.4, p. 360.3.

■ Our recording statute, NDCC § 47–19–41, provides in part as follows:

"Every conveyance of real estate *not recorded shall be void as against any subsequent purchaser in good faith*, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is deposited with the proper officer for record and subsequently recorded, whether entitled to record or not, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance." [Emphasis added.]

A mineral reservation is a conveyance under this statute. *Reiss v. Rummel*, 232 N.W.2d 40 (N.D.1975).

■ A person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself and is not protected as a purchaser in good faith. *City of Bismarck v. Casey*, 77 N.D. 295, 43 N.W.2d 372 (1950); *Agriculture Credit Corp. v. State*, 74 N.D. 71, 20 N.W.2d 78 (1945); *Pierce Township of Barnes County v. Ernie*, 74 N.D. 16, 19 N.W.2d 755 (1945); *Gress v. Evans*, 1 Dak. 387 [371], 46 N.W. 1132 (1877).

■ In this instance because L. P. Hall had constructive notice of the terms of the contract between Northwestern and the Mossers, he cannot be protected as a purchaser in good faith under our recording acts. Accordingly, we believe that the district court properly determined that the Hall Heirs' and Mossers' claims based upon recording act priority were without merit.

The next issue raised by the Hall heirs relates to laches. The Hall heirs contended that North Dakota is among the states placing the burden of proving that a subsequent purchaser purchased with notice of an earlier unrecorded instrument upon the one claiming under that instrument (Burlington Northern), and that Burlington Northern "has reclined with that burden of proof . . . since 1949." *Myhra v. Rustad*, 58 N.D. 258, 225 N.W. 796 (1929); see also, 107 A.L.R. 519. Thus, the Hall heirs asserted that Burlington Northern's quiet title action should be barred by laches.

■ Laches is an equitable doctrine, and cases involving laches must stand or fall on their own facts and circumstances. *Strom v. Giske*, 68 N.W.2d 838 (N.D.1954). Laches does not arise from a delay or lapse of time alone, and in addition to the time element, the party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state. *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659 (N.D.1966); *McGee v. Stokes Heirs at Law*, 76 N.W.2d 145 (N.D.1956); *Strom v. Giske, supra; Grandin v. Gardiner*, 63 N.W.2d 128 (N.D. 1954); *Larson v. Quanrud, Brink & Reibold*, 78 N.D. 70, 47 N.W.2d 743, 29 A.L.R.2d 230 (1950).

■ In this instance we must keep in mind that mineral estates may be severed from the surface estate and possession of the surface estate alone does not necessarily establish ownership of the mineral estate. We recognize that there was some mining of coal done by the Hall heirs. We must also recognize and keep in mind that laches is an equitable concept. However, in this instance, we do not believe either party has demonstrated that they are entitled to any greater equitable considerations than the other party. Because we do not believe either party is entitled to any greater equitable considerations than the other party, and taking into account the total factual circumstances of this case, we do not believe Burlington Northern's quiet title action should be barred by laches.

Based on our decision on the issues raised by the Hall heirs, we need not reach the

issue raised by the Mossers, because, as they have conceded, that issue is moot.

The judgment of the district court and the order denying the Hall heirs' and Mossers' motions to make additional findings of fact and conclusions of law are affirmed.

No costs to be assessed against either party.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.